# United States Court of Appeals for the Federal Circuit

_____

**OLD RELIABLE WHOLESALE, INC.,**
*Plaintiff-Appellant,*

**v.**

**CORNELL CORPORATION,**
*Defendant-Appellee.*

_____

2010-1247

_____

Appeal from the United States District Court for the Northern District of Ohio in case no. 06-CV-2389, Senior Judge David D. Dowd, Jr.

_____

Decided: March 16, 2011

_____

R. ERIC GAUM, Hahn Loeser & Parks, LLP, of Cleveland, Ohio, argued for plainff-appellant. With him on the brief was SHANNON V. MCCUE.

MATTHEW J. SCHAAP, Severson, Sheldon, Dougherty & Molenda, P.A., of Apple Valley, Minnesota, argued for defendant-appellee. With him on the brief was GARY L. HUUSKO.

_____

Before NEWMAN, MAYER, and BRYSON, *Circuit Judges.*

MAYER, *Circuit Judge.*

Old Reliable Wholesale, Inc. ("Old Reliable") appeals a judgment of the United States District Court for the Northern District of Ohio awarding Cornell Corporation ("Cornell") attorney fees pursuant to 35 U.S.C. § 285. *See Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 06-CV-2389, 2010 U.S. Dist. LEXIS 8756 (N.D. Ohio Feb. 2, 2010) ("*Attorney Fees Decision*"). We reverse.

BACKGROUND

Old Reliable is the assignee of U.S. Patent No. 5,069,950 (the "'950 patent"), which is directed toward insulated roof board. Independent claim 1 of the '950 patent provides:

1. A composite insulated roof board structure comprising:

(a) an insulated roof board member comprising (1) a main portion of rigid coherent solid insulating material, and (2) a top portion comprising a plurality of spaced blocks above said main portion and integral therewith, said blocks defining therebetween a network of interconnected channels at the same level for horizontal venting of water vapor; and

(b) a relatively hard, dense protective top layer which is adhered to the tops of the blocks of said insulated roof board member.

'950 patent, col. 7 l. 25-col. 8 l. 7.

Cornell, a Wisconsin roof manufacturer, produces several different insulated roofing products. Its Vent-Top ThermaCal 1 ("VT-1") consists of a bottom layer of polyisocyanurate insulation, a layer of paper felt facing bonded to the insulation, spaced blocks on top of the felt

facing, and a top layer of oriented strand board ("OSB"). Its Vent-Top ThermaCal 2 ("VT-2") consists of a bottom layer of polyisocyanurate insulation, a layer of OSB, spaced blocks on top of the layer of OSB, and an additional layer of OSB on top of the blocks.

In 2006, Old Reliable filed an infringement action against Cornell, asserting that the VT-1 product infringed claims 1, 2, 3, 6 and 7 of the '950 patent. In response, Cornell argued that the '950 patent was invalid because it was anticipated by its VT-2 product, which was sold before the critical date for the '950 patent. Cornell further asserted that the '950 patent was anticipated, or rendered obvious, by several other prior art references, including the Air-Flo insulated roofing panel manufactured by Branch River Foam Plastics, Inc. ("Branch River").

Old Reliable, however, argued that the VT-2 did not anticipate the '950 patent because it did not teach all of the structural elements required by the asserted claims. Specifically, Old Reliable asserted that because the VT-2 contained a layer of OSB between the insulation and the spaced blocks, the blocks were not "integral" with the "main portion" of insulating material. *See* '950 patent, col.7 l.29-col.8 l.2 (requiring "a top portion comprising a plurality of spaced blocks above said main portion and *integral therewith*" (emphasis added)). Old Reliable further contended that the Air-Flo product was not anticipatory prior art because it did "not disclose blocks that define interconnected channels" as required by the asserted claims and did not allow for cross-venting.

In September 2007, Cornell deposed Anthony Crookston, Jr., Old Reliable's founder and the named inventor on the '950 patent. Crookston stated that the Inventsaboard (the commercial embodiment of the '950 patent), the VT-1

(the accused product) and the VT-2 (the product alleged to anticipate) did "[e]xactly the same thing." Cornell also produced literature indicating that the Branch River Air-Flo product had channels that could "be provided in either direction" to suit particular roofing requirements.

In a March 3, 2008, deposition, James Rice, Ph.D., Old Reliable's expert, acknowledged that if the Air-Flo product had been manufactured with cross-channels it would have been "identical to" the invention claimed in the '950 patent. Furthermore, Richard Dauphinais, a long-time Branch River employee, testified that Branch River filled an order in which it had cut cross-channels into its Air-Flo product prior to the '950 patent's critical date.

In December 2007, the district court issued a claim construction order, construing the term "integral" to mean "formed with or joined to" and the term "adhered" to mean "attached." In March 2009, the trial court granted Cornell's motion for summary judgment of patent invalidity, concluding that the VT-2 product was anticipatory prior art. Although the court acknowledged that the VT-2 contained a layer of OSB between the insulation and the spaced blocks, it determined that the spaced blocks were nonetheless "integral" with the main portion of insulating material as required by the asserted claims. *Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 06-CV-2389, 2009 U.S. Dist. LEXIS 25181, at *14-15 (N.D. Ohio Mar. 24, 2009) ("*Invalidity Decision*").

The trial court also determined that the '950 patent was anticipated by the Branch River Air-Flo product. *Id.* at *15-17. Rejecting Old Reliable's argument that the Air-Flo product did not contain the cross-ventilation feature required by the asserted claims, and relying of the deposition testimony of Dauphinais, the district court

held that an Air-Flo product with cross-ventilation was sold prior to the '950 patent's critical date. *Id.* at \*16.

In addition, the court concluded that the '950 patent was invalid as obvious under 35 U.S.C. § 103(a). Noting that "[a]nticipation is the epitome of obviousness," the court determined that since the VT-2 and the Air-Flo products anticipated the '950 patent, they also rendered the asserted claims obvious. *Id.* at \*18 (citations and internal quotation marks omitted).

Old Reliable timely appealed to this court. On December 11, 2009, after briefing and oral argument, we affirmed the district court's summary judgment of patent invalidity without opinion pursuant to Fed. Cir. R. 36. *See Old Reliable Wholesale, Inc. v. Cornell Corp.*, 355 Fed. App'x 417 (Fed. Cir. 2009).

## I.  The Attorney Fees Award

On April 17, 2009, Cornell filed a motion in district court asking that the case be declared exceptional and that it be awarded attorney fees pursuant to 35 U.S.C. § 285. On February 2, 2010, the district court granted the motion, and awarded Cornell attorney fees and related travel and out-of-pocket expenses in the amount of $183,517.11. The court also awarded Cornell its costs of $13,111.53 pursuant to 28 U.S.C. § 1920. *Attorney Fees Decision*, 2010 U.S. Dist. LEXIS 8756, at \*21-22.

Although it determined that the case was exceptional, the trial court held that Cornell was only entitled to recover attorney fees for the portion of the infringement litigation following the September 26, 2007, Crookston deposition. *Id.* at \*12. The court concluded that Old Reliable may have "had some basis" for its contention that the VT-2 product did not anticipate the '950 patent prior to this deposition. *Id.* at \*13. The case became excep-

tional, however, after Crookston "admitted in deposition that the VT-2 . . . did the same thing as his invention." *Id.* at \*12. After this testimony, "it was apparent that [the '950] patent was anticipated and any further action against Cornell for infringement was baseless." *Id.* at \*13. In the court's view, Old Reliable's decision to maintain its infringement action following Crookston's deposition was "improper and unjustified" and "warranted a finding of an exceptional case" under 35 U.S.C. § 285. *Attorney Fees Decision*, 2010 U.S. Dist. LEXIS 8756, at \*13.

## II. The Reexamination Proceedings

On October 16, 2008, the United States Patent and Trademark Office ("PTO") granted Cornell's request for *ex parte* reexamination of the '950 patent.[1] On June 15, 2010—after this court had affirmed the district court's invalidity determination and the district court had awarded Cornell attorney fees—the PTO issued a notice of intent to issue an *ex parte* reexamination certificate confirming the patentability of all claims of the '950 patent. After reviewing numerous prior art references, including the VT-2 and the Air-Flo, the PTO concluded that "[n]one of the prior art discloses nor renders obvious the combination of features" disclosed in the '950 patent.

Soon thereafter, however, the PTO withdrew the notice of intent to issue an *ex parte* reexamination certificate for the '950 patent. In withdrawing the notice, the PTO stated that "the claims of [the '950 patent] are invalid" and noted that this court had affirmed the district court's invalidity determination.

---

[1] In December 2009, Old Reliable provided the PTO with a copy of this court's judgment affirming the district court's determination that the '950 patent was invalid.

Ill. The Appeal of the Attorney Fee Award

On March 2, 2010, Old Reliable filed a timely notice of appeal of the district court's judgment awarding Cornell attorney fees under section 285. This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). When reviewing a section "285 exceptional case determination, we review the district court's underlying factual findings for clear error and its legal conclusions without deference." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1026 (Fed. Cir. 2008).

DISCUSSION

A district court is vested with authority to award attorney fees to a prevailing party in patent litigation if it determines that the case is "exceptional." 35 U.S.C. § 285. While the discretion granted to a trial court under section 285 is broad, it is not unbridled. *See Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009) (noting that "only a limited universe of circumstances warrant a finding of exceptionality in a patent case"); *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003) (emphasizing that section 285 is limited to cases where the award of fees "is necessary to prevent a gross injustice" (citations and internal quotation marks omitted)); *Cambridge Prods., Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050 (Fed. Cir. 1992) ("[T]he exceptional nature of the case must be established by clear and convincing evidence."). In view "of the substantial economic and reputational impact" of an award of attorney fees, this court is required "to examine the record with care to determine whether the trial court has committed clear error in holding the case exceptional or has abused its discretion with respect to the fee award." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 953 (Fed. Cir.

2010).

"Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). The standard for establishing that a claim is "objectively baseless" under section 285 "is identical to the objective recklessness standard for enhanced damages and attorneys' fees against an accused infringer for § 284 willful infringement actions under *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc)." *iLOR, LLC v. Google, Inc.*, Nos. 2010-1117, 2010-1172, 2011 U.S. App. LEXIS 516, at *11 (Fed. Cir. Jan. 11, 2011). Thus, "objective baselessness" depends not on the state of mind of the party against whom fees are sought, *see Seagate*, 497 F.3d at 1371, but instead on "an objective assessment of the merits" of the challenged claims and defenses. *iLOR*, 2011 U.S. App. LEXIS 516, at *12 (citations and internal quotation marks omitted). Unless an argument or claim asserted in the course of litigation is "so unreasonable that no reasonable litigant could believe it would succeed," it cannot be deemed objectively baseless for purposes of awarding attorney fees under section 285. *Id.*; *see also Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d 1254, 1260 (Fed. Cir. 2008).

While Old Reliable's arguments in support of the validity of the '950 patent proved unsuccessful, we conclude that the "exacting standard" for establishing that a case is exceptional under section 285, *iLOR*, 2011 U.S. App. LEXIS 516, at *10, has not been met. Old Reliable had reasonable grounds for its argument that the '950 patent was valid over the prior art, even following inventor testimony that the prior art VT-2 product and the com-

mercial embodiment of the '950 patent did "[e]xactly the same thing." Likewise, because there was a genuine dispute regarding whether the Branch River Air-Flo product allowed for the cross-ventilation disclosed in the '950 patent, Old Reliable had a legitimate basis for its contention that the Air-Flo product was not anticipatory prior art. Finally, given that the PTO, after reviewing the relevant prior art, issued a notice of intent to issue an *ex parte* reexamination certificate confirming the patentability of all claims of the '950 patent, we are unwilling to conclude that Old Reliable lacked a reasonable foundation for arguing that its patent was not anticipated.

## I. The Crookston Deposition

The linchpin for the district court's award of attorney fees was its determination that Old Reliable had no reasonable basis for maintaining its infringement action following the September 26, 2007, Crookston deposition. In the court's view, Old Reliable may have "had some basis" for its contention that the VT-2 product did not anticipate the '950 patent prior to the deposition, but when Crookston testified that Cornell's prior art VT-2 product did "[e]xactly the same thing" as the commercial embodiment of the '950 patent, "it was apparent that [the '950] patent was anticipated and any further action against Cornell for infringement was baseless." *Attorney Fees Decision*, 2010 U.S. Dist. LEXIS 8756, at *13 (emphasis omitted) (footnote and internal quotation marks omitted).

We disagree. "Anticipation requires that all of the claim elements and their limitations are shown in a single prior art reference." *In re Skvorecz*, 580 F.3d 1262, 1266 (Fed. Cir. 2009); *see also Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (explaining that "invalidity by anticipation requires that

the four corners of a single, prior art document describe every element of the claimed invention, either expressly or inherently"). Regardless of whether the VT-2 and the commercial embodiment of the '950 patent did "[e]xactly the same thing," there could be no anticipation unless the VT-2 disclosed, either expressly or inherently, all the structural limitations contained in the asserted apparatus claims. *See Skvorecz*, 580 F.3d at 1268 (explaining that a prior art device did not anticipate because it did not contain the "offset" structure disclosed in the asserted claims); *Applied Med. Res. Corp. v. United States Surgical Corp.*, 147 F.3d 1374, 1380 (Fed. Cir. 1998) (emphasizing that a prior art device does not anticipate "simply by possessing identically named parts, unless these parts also have the same structure or otherwise satisfy the claim limitations"); *In re Ruskin*, 347 F.2d 843, 846 (CCPA 1965) (Even where a prior art device is the "functional equivalent" of a patented product, it does not anticipate unless it discloses the structure required by the asserted claims.). Because Old Reliable pointed to alleged structural differences between the VT-2 and the commercial embodiment of the '950 patent, it was not required to concede that its patent was anticipated even following inventor testimony that the two products were functionally equivalent.[2]

---

[2] In addition to arguing that the VT-2 did not contain the structural limitations of claim 1 of the '950 patent, Old Reliable also contended that the VT-2 functioned differently than the patented device because, due to the additional layer of OSB, it had a much greater load-bearing capacity than the patented product. Crookston's testimony that the VT-2 and the commercial embodiment of the '950 patent did "[e]xactly the same thing" may have served to rebut Old Reliable's argument that the two products were functionally different. It was not, however,

## II. Distinguishing the VT-1 and VT-2 Products

Where a patent is granted in a field of invention abundant with prior art, a patentee will sometimes find it difficult to establish that his patent is broad enough to cover an accused product, yet narrow enough "to evade the strictures of a crowded art field." *Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1301 (Fed. Cir. 1999). As the district court correctly recognized, Old Reliable faced significant challenges in its effort to establish that the '950 patent was not anticipated by the VT-2 product, but was nonetheless infringed by the VT-1 product. *See Invalidity Decision*, 2009 U.S. Dist. LEXIS 25181, at *8-15.

Independent claim 1 of the '950 patent requires a "main portion" of solid insulating material and "a top portion [comprised of] a plurality of spaced blocks" that is above the insulation layer and "integral therewith." '950 patent, col.7 l.28-col.8 l.2. In the prior art VT-2 product, the foam insulation layer is separated from the spaced blocks by a layer of OSB. In the accused VT-1 product, by contrast, the foam insulation layer is separated from the spaced blocks by a layer of felt facing. Old Reliable argued that the VT-2 did not anticipate the '950 patent because, due to the layer of OSB between the insulation and the spaced blocks, the blocks were not "integral" with the "main portion" of insulating material as required by the asserted claims. In order to establish infringement, however, Old Reliable argued that in the VT-1 product the spaced blocks were "integral" with the "main portion" of insulating material, notwithstanding the fact that the blocks were separated from the insulating material by a layer of felt facing.

---

sufficient to establish that the VT-2 met the structural limitations of the asserted claims.

The district court concluded that Old Reliable was "trying to have it both ways in order to preserve its infringement claim against [the VT-1 product] and avoid invalidating the '950 Patent based on the prior art of [the VT-2 product]." *Invalidity Decision*, 2009 U.S. Dist. LEXIS 25181, at *14. Rejecting what it perceived as the "inconsistent positions" taken by Old Reliable, the court determined that the spaced blocks were "integral" with the insulation layer in both the VT-1 and the VT-2 products. *Id.*

We cannot agree, however, that Old Reliable's argument that the spaced blocks were integral with the main portion of insulating material in the VT-1, but not in the VT-2, was objectively meritless. *See Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1315 (Fed. Cir. 2010) (explaining that "[d]efeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless"). There was nothing frivolous or inherently implausible about Old Reliable's assertion that, from a physical standpoint, separating the insulation from the spaced blocks by a thin layer of felt facing is different than separating the insulation from the blocks with a bulky layer of OSB. As Old Reliable explained, "unlike felt facing, which is flexible, the OSB is inflexible and a separate structural component that does not conform to and form part of the insulating material." *Invalidity Decision*, 2009 U.S. Dist. LEXIS 25181, at *11 (internal quotation marks omitted). Indeed, Cornell's own Material Safety Data Sheet ("MSDS") indicated that the felt facer was part of the polyisocyanurate foam insulation, but that the OSB was a separate structural component from the insulation layer.[3]

---

[3]    Cornell's MSDS describes the appearance of its roof board products as follows:

Furthermore, although Cornell had been selling its VT-2 product for several years before it introduced the VT-1, the VT-1 quickly surpassed the VT-2 in terms of sales. The undisputed commercial success of the VT-1 provided a legitimate basis for Old Reliable's assertion that secondary considerations weighed against any finding that the '950 patent was invalid over the prior art. *See Geo M. Martin Co. v. Alliance Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1304 (Fed. Cir. 2010) ("Secondary considerations of non-obviousness must be considered when present.").

### III. The Rice Deposition

The trial court also pointed to testimony from Rice, Old Reliable's expert, in support of its conclusion that an award of attorney fees was warranted. The court stated:

> On March 3, 2008, plaintiff's expert, James Rice, PhD, conceded that [the] felt facer of the accused VT-1 product was "integral with" the spaced block[s] just as the OSB of the non-infringing VT-2 was "integral with" the spaced blocks. This rendered the presence of the board in the VT-2 irrelevant[,] making it invalidating prior art. Pursuing

---

Appearance and Odor: (Polyisocyanurate Foam)—White or cream colored solid with a black fiberglass facing, and with no odor. (Oriented strand board/Plywood)—Light to dark tan colored solid with limited odor.

The MSDS also states that the "products are manufactured/assembled using rigid foam insulation board, which is completed polymerized polyisocyanurate rigid cellular plastic material *along with* either oriented strand board or untreated/treated plywood panel products." (emphasis added).

the infringement suit after this evidence is further evidence of [Old Reliable's] bad faith.

*Attorney Fees Decision*, 2010 U.S. Dist. LEXIS 8756, at *13 n.20.

On review, we cannot agree that Old Reliable's decision to continue its infringement action after Rice's testimony was objectively unreasonable or evidence of bad faith.[4] Rice testified that when a block of insulating material is manufactured from polyisocyanurate, the foam insulation will stick to anything it touches and become "integral" with that object. The question of whether the foam insulation becomes integral with the OSB, however, is different than the question of whether the spaced blocks are integral with the "main portion" of insulating material as required by the asserted claims. *See* '950 patent, col.8 ll.1-2. Rice asserted, moreover, that the OSB in the VT-2 product "does not become part of the 'main portion' of the insulating material because, unlike the felt facing, OSB is an inflexible separate structural component that changes the overall structure" of the roof board. *Invalidity Decision*, 2009 U.S. Dist. LEXIS 25181, at *12 (footnote omitted). This testimony clearly supported Old Reliable's contention that the VT-2 did not anticipate because it did not meet all of the structural limitations of independent claim 1 of the '950 patent.

---

[4] When making a section 285 fee award, subjective considerations of bad faith are irrelevant if the challenged claims or defenses are not objectively baseless. *iLOR*, 2011 U.S. App. LEXIS 516, at *13; *see also Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."). Because we conclude that Old Reliable's arguments in support of the validity of the '950 patent were not objectively baseless, we need not reach the question of whether it acted in bad faith.

Thus, even following Rice's deposition, Old Reliable had a non-frivolous basis for asserting that, due to the intervening layer of OSB between the insulation and the spaced blocks, the VT-2 was not invalidating prior art.

IV. Anticipation by the Branch River Air-Flo Product

We likewise conclude that Old Reliable had a reasonable foundation for its argument that the '950 patent was not anticipated by the Branch River Air-Flo product. Old Reliable contended that the Air-Flo was not invalidating prior art because it did not contain the cross-ventilation feature disclosed in the '950 patent. The district court rejected this argument, relying on the testimony of Dauphinais, a long-time Branch River employee, who stated that Branch River had filled an order in which it had cut cross-channels into its Air-Flo product prior to the critical date of the '950 patent.[5] *Invalidity Decision*, 2009 U.S. Dist. LEXIS 25181, at *15-17.

Old Reliable, however, had non-frivolous grounds for asserting that Dauphinais' testimony was inadequate to establish anticipation by the Air-Flo. It argued that his testimony was inherently unreliable, noting that Dauphinais appeared uncertain as to when the events in question occurred. Old Reliable contended, moreover, that his testimony was wholly uncorroborated and that none of the documentation produced by Cornell showed cross-venting

---

[5] The district court also relied on Rice's testimony in concluding that the Air-Flo was anticipatory prior art. *See Invalidity Decision*, 2009 U.S. Dist. LEXIS 25181, at *15. Rice acknowledged, in response to a hypothetical question, that if cross-channels had been cut into the Air-Flo product, it would have been invalidating prior art. Nothing in his testimony, however, established that the Air-Flo product, as it was manufactured and sold prior to the '950 patent's critical date, contained the cross-venting feature of the asserted claims.

on the Air-Flo product before the '950 patent's critical date. *See Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, No. 2009-1251, 2010 U.S. App. LEXIS 25967, at *32 (Fed. Cir. Dec. 22, 2010) ("Generally, corroboration is required of any witness whose testimony alone is asserted to invalidate a patent. This requirement stems from the suspect nature of oral testimony concerning invalidating events." (citations and internal quotation marks omitted)). Thus, although the district court chose to credit Dauphinais' testimony, Old Reliable had reasonable grounds for challenging that testimony and for contending that the Air-Flo was not anticipatory prior art.

## V. The Reexamination Proceedings

On June 15, 2010, the PTO issued a notice of intent to issue an *ex parte* reexamination certificate confirming the patentability of all claims of the '950 patent. After reviewing numerous prior art references, including the VT-1 and the Air-Flo, the PTO concluded that "[n]one of the prior art discloses nor renders obvious the combination of features" disclosed in the '950 patent. While it is true that this "court is not bound by the PTO's actions and must make its own independent determination of patent validity," *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005), it is equally true that the PTO has acknowledged expertise in evaluating prior art and assessing patent validity. *See Hyatt v. Kappos*, 625 F.3d 1320, 1334 (Fed. Cir. 2010) (en banc) (recognizing the deference owed the PTO as "the knowledgeable agency charged with assessing patentability"); *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1331 (Fed. Cir. 2008) ("This is not to say that the determinations made by the corps of examiners are not important, or should not be worthy of appropriate deference to their expertise in . . . technical matters, especially when we have the benefit of well-reasoned explications."); *Applied*

*Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996) ("The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability."). The fact that the PTO, after assessing the relevant prior art, confirmed the patentability of all claims of the '950 patent undercuts Cornell's contention that Old Reliable had no reasonable basis for its assertion that its patent was not anticipated.[6]

Cornell argues that this court should not give weight to the PTO's notice of intent to issue an *ex parte* reexamination certificate confirming the validity of the '950 patent. [7]  In support, it notes that an appellate tribunal generally does not review arguments or evidence not

---

[6]    Whereas clear and convincing evidence is required to invalidate a patent in district court, a patent can be invalidated during PTO reexaminations by a simple preponderance of the evidence. *In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008).

[7]    The record is not entirely clear as to why the PTO issued the notice of intent to issue a reexamination certificate confirming the patentability of all claims of the '950 patent on June 15, 2010, but then withdrew that notice two weeks later.  It appears, however, that the agency did not realize that this court had affirmed the district court's invalidity determination when it issued its original notice.  When it withdrew the notice, the PTO stated that "the claims of [the '950 patent] are invalid" and noted that "the Federal Circuit has issued an Order affirming the District Court['s]" invalidity determination. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1429 (Fed. Cir. 1988) (explaining that the PTO will discontinue reexamination in situations where a trial court finds a patent invalid and that decision is either upheld on appeal or not appealed).

presented to the district court. [8] *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). Cornell, moreover, "disputes the accuracy and completeness of the reexamination proceedings," and contends that "[t]he examiner did not have, nor could he have reviewed, all of the information, facts and testimony upon which the district court based its decision to invalidate the '950 patent."

We do not find these arguments persuasive. Although the results of the PTO reexamination proceedings were not available to the district court, this court can take judicial notice of the fact that the PTO, after assessing the relevant prior art, issued a notice of intent to issue a reexamination certificate confirming the patentability of all claims of the '950 patent. *See Advanced Software Design Corp. v. Fed. Reserve Bank*, 583 F.3d 1371, 1379 n.3 (Fed. Cir. 2009) (explaining that this court can take judicial notice of a decision from another court or agency); *Grp. One Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1306 (Fed. Cir. 2005) (emphasizing that judicial notice may be taken at any stage of a proceeding). Moreover, although the PTO may not have considered all the deposition testimony relied upon by the district court in making its invalidity determination, the fact remains that the PTO assessed the VT-2 and the Air-Flo, as well as many other prior art references, and yet confirmed the validity of all claims of the '950 patent over the prior art.

---

[8] The trial court entered judgment awarding attorney fees to Cornell on February 2, 2010. It therefore did not have the benefit of the PTO's reexamination determination upholding the validity of the '950 patent when it issued its fee award decision.

"[I]t is the trial court's decision, not the PTO's, that is before us on appeal." *Tech. Licensing*, 545 F.3d at 1331. This court, therefore, is not reviewing the correctness of the PTO's reexamination validity determination. We conclude, however, that the fact that the PTO confirmed the validity of the '950 patent on reexamination provides probative evidence on the issue of whether Old Reliable had a reasonable basis for its assertion that its patent was not anticipated.

## VI. Litigation Misconduct

Where a party engages in litigation misconduct, fees can be awarded pursuant to section 285 even absent clear and convincing evidence that an asserted claim or defense is objectively baseless. *Brooks Furniture*, 393 F.3d at 1381. Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings. [9] *See ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1380 (Fed. Cir. 2009) (affirming an award of attorney fees where a party made "multiple, repeated misrepresentations" to the court (citations and internal quotation marks omitted)); *Mathis v. Spears*, 857 F.2d 749, 752 (Fed. Cir. 1988) (affirming an award of attorney fees where a party "blatantly misled[] the PTO" and then "attempted to employ the courts as handmaidens to its iniquity" (footnote omitted)).

---

[9] The trial court specifically determined that sanctions were to be assessed only against Old Reliable and not against its attorneys. *See Attorney Fees Decision*, 2010 U.S. Dist. LEXIS 8756, at *17 n.23 ("The Court's award of attorney fees to Cornell is against [Old Reliable] *only*. The Court does not award the fee against counsel for [Old Reliable] and finds no basis for an award against [Old Reliable's] lawyers." (emphasis in original)).

No such litigation misconduct is present here.  Contrary to the trial court's assertions, the failure of Old Reliable to engage in settlement negotiations, *see Attorney Fees Decision*, 2010 U.S. Dist. LEXIS 8756, at *16, does not constitute the type of conduct worthy of sanctions under section 285.[10]  "[T]here is a presumption that an assertion of infringement of a duly granted patent is made in good faith," and "[c]lear and convincing evidence is required to overcome that presumption." *Medtronic*, 603 F.3d at 954.  Because Old Reliable had an objectively reasonable basis for maintaining an infringement suit, the refusal to make or accept an offer of settlement is not, in and of itself, sufficient to establish litigation misconduct.  *See McNeil-PPC, Inc. v. L. Perrigo Co.*, 337 F.3d 1362, 1372 (Fed. Cir. 2003) (emphasizing that a patentee has the right to "vigorously . . . enforc[e] a presumptively valid patent").

## CONCLUSION

Accordingly, the judgment of the United States District Court for the Northern District of Ohio is reversed and the award of attorney fees is vacated.

## COSTS

No costs.

## REVERSED AND FEE AWARD VACATED

---

[10]   We note that the record shows that Old Reliable did, in fact, propose an offer of settlement, but that the offer was rejected by Cornell in May 2007.