NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PRECISION LINKS INCORPORATED,**
*Plaintiff-Appellant,*

**v.**

**USA PRODUCTS GROUP, INC.,** AND
**HOME DEPOT U.S.A., INC.,**
*Defendants-Appellees.*

---

2012-1461

---

Appeal from the United States District Court for the Western District of North Carolina in No. 08-CV-0576, Judge Martin Reidinger.

---

Decided: June 7, 2013

---

JAMES M. HARRINGTON, Harrington Law, P.C., of Concord, North Carolina, argued for plaintiff-appellant.

JASON M. GONDER, Haynes and Boone, LLP, of San Jose, California, argued for defendants-appellees. With him on the brief was DEBRA J. MCCOMAS, of Dallas, Texas.

---

Before DYK, BRYSON, and REYNA, *Circuit Judges.*

BRYSON, *Circuit Judge.*

This is an appeal from an award of attorney fees in a patent case. The district court entered a fee award in favor of the defendants based on its conclusion that the plaintiff's claims were frivolous and that the plaintiff had engaged in litigation misconduct. While we uphold the district court's conclusion that various aspects of the plaintiff's conduct are sanctionable, we disagree with the district court's conclusion as to one aspect of the plaintiff's conduct and we therefore vacate the sanctions award and remand for the district court to revisit whether this case qualifies as an exceptional case, whether attorney fees should be awarded, and if so in what amount.

I

The plaintiff, Precision Links Incorporated, owns U.S. Patent No. 5,673,464 ("the '464 patent"), which claims a tie-down strap to restrain the movement of cargo during transport and a "cargo securement system for restraining the movement of cargo" comprising a plurality of such straps. Precision sued USA Products Group, Inc., which manufactured a strap designed for restraining cargo, and Home Depot, U.S.A., Inc., which sold the strap in its retail outlets, alleging that the strap infringed claims 1, 6, and 8 of the '464 patent. Precision also asserted a state law claim for unfair and deceptive trade practices based on the defendants' sale of the accused straps.

After dismissing the state law claim and denying the plaintiff's motion for a preliminary injunction, the district court adopted the defendants' proposed construction of the key term in the asserted claims. Because the parties agreed that the accused products would not infringe under the district court's claim construction, the district court entered summary judgment of noninfringement.

Precision appealed to this court, but its notice of appeal was untimely, and this court dismissed the appeal. *Precision Links, Inc. v. USA Prods. Group, Inc.*, 404 Fed. App'x 478 (Fed. Cir. 2010). Following the dismissal of the appeal, the defendants filed an application for attorney fees, arguing that the case was exceptional under 35 U.S.C. § 285. The district court granted the motion and awarded attorney fees in the amount of $250,395. The district court based its ruling in substantial part on its conclusion that Precision's infringement action was objectively baseless and had been brought in bad faith. The court concluded that Precision's argument as to the construction of claim 1 was frivolous, and that Precision's pre-filing investigation was inadequate and evidenced its lack of good faith. The court added that the portion of counsel's pre-filing opinion letter relating to claims 6 and 8 was "so lacking in any fundamental analysis or evidentiary support that the Plaintiff's reliance on [the] opinion in asserting infringement of Claims 6 and 8 was unreasonable and reflects a lack of good faith."

In addition, the court found that Precision had engaged in several acts of litigation misconduct that were "so vexatious and unjustified so as to warrant the imposition of fees in this case." In particular, the court regarded as "frivolous" Precision's theory that the accused straps were manufactured of a cheap and inferior material, and it criticized Precision's reliance on that allegation to support both its motion for a preliminary injunction and its state law claim of unfair and deceptive trade practices. The court also found that Precision unnecessarily extended the litigation by filing a frivolous motion in the district court in an effort to salvage its untimely appeal, which imposed additional costs on the defendants. Precision appeals from the fee award.

## II

We review a district court's exceptional case finding under section 285 for clear error and an attorney fee award under that section for an abuse of discretion. However, "because of the substantial economic and reputational impact of an award of attorney fees, we examine the record with care to determine whether the trial court clearly erred in its exceptional case finding." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011).

## A

In the sanctions proceeding, the district court focused mainly on Precision's claim construction argument. That argument formed the basis for Precision's contention that the accused straps infringed claim 1 of the '464 patent. In pertinent part, that claim recites a tie-down strap with openings, each of which is "dimensioned for the passage therethrough of a main body portion of a second identical tie down strap for the redirection of the second identical tie down strap when the elastic main body portion defining said opening is elongated." The specification and figures of the '464 patent make clear that the second strap must be able to pass through the openings in the first strap, which enables the user to create a multiple-strap configuration that can be used to secure cargo.

The accused straps had openings along their length, but the openings in the straps were not as large as those depicted in the '464 figures. Moreover, instead of tapering off, the accused straps had bulbous ends with removable hooks. The parties agreed that although one of the accused straps could be passed through an opening in another of the straps when the first strap was stretched, it could do so only with some difficulty and only by distorting the shape of the opening.

Precision argued that the quoted limitation should be construed to mean that the openings in the straps are

large enough to permit one of the straps to be pulled through the opening in another.  Precision contended that the limitation did not require that the openings be "so large that the main body portion [of the second strap] can pass through without touching the sides, but simply that it can pass through."  The district court, however, construed the claim language more narrowly, to mean that "by the elongation of the first tie down strap, the plurality of openings in said strap become dimensioned for the passage therethrough of a main body portion of a second identical tie down strap, thus permitting redirection of the second identical tie down strap."  That meant that an opening in the first strap must be dimensioned for passage of the second strap solely as a result of the elongation of the first strap, and not by any additional distortion caused by the passage of the second strap through the opening.

Because it was acknowledged that one of the accused straps could not pass through the opening in a second such strap without stretching and distorting the opening, the district court's claim construction effectively defeated Precision's claim of infringement.  In the sanctions proceeding, the district court held that Precision's claim construction argument was objectively baseless and that its infringement action on claim 1 of the '464 patent was sufficiently frivolous that it must have been brought in bad faith.[1]

We need not, and do not, decide whether the district court's claim construction was correct; it is sufficient for

---

[1] We review the district court's determination of objective baselessness without deference, the factual findings underlying its determination of subjective bad faith for clear error, and its attorney fee award for abuse of discretion. *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 687 F.3d 1300, 1309-10, 1322 (Fed. Cir. 2012).

us to conclude that Precision's argument as to the proper construction of the claim was at least not frivolous. For that reason, we hold that Precision's infringement theory as to claim 1 of the '464 patent was not objectively baseless and that it was improper for the district court to conclude that the infringement allegations as to claim 1 were brought in bad faith.

In ruling that the first strap "must achieve the dimensions required for the passage therethrough of the main body of a second strap by the act of elongation," the district court looked to a dictionary definition of the word "dimensioned" (i.e., "form[ed] to the required dimensions") which the court regarded as consistent with the plain meaning of the limitation.

The court also relied on the specification, which the court interpreted as requiring that the opening in the first strap be "dimensioned for" the passage of the second strap solely "by the elongation of the first strap." The court found no support for the plaintiff's argument that some minor deformation of the first strap's opening would be permitted as the second strap passed through it, as long as the passage did not result in "substantial deformation" of the opening, and as long as the stretching required to accommodate the second strap did not require "excessively loading the first strap" by exceeding its recommended stretching tolerance.

While the evidence surveyed by the district court provides some support for the court's claim construction of the critical claim language, we do not believe that the evidence is sufficiently conclusive to render the plaintiff's contrary argument frivolous. Patent holders "are shielded from the additional litigation burden of fee-shifting when their positions are reasonable." *Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 711 F.3d 1341, 1346 (Fed. Cir. 2013). It was reasonable for Precision to view an opening as "dimensioned for" the passage of an object even if the object

must distort the opening in order to pass through it, as could be true, for example, of a button passing through a hole in an elastic fabric, or the ends of fingers passing through the holes in fingerless rubber gloves. Even if distorting the strap's openings would not be the optimal design, even "inefficient infringement" is still infringement. *Biogen, Inc. v. Berlex Labs., Inc.*, 318 F.3d 1132, 1141 (Fed. Cir. 2003), *citing Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 859 (Fed. Cir. 1988).

Moreover, Precision argued that while the bulbous end portions of the accused straps were larger than the openings, the "main body" portions of the accused straps were smaller than the ends and were approximately the same size as the openings. It was not frivolous to argue that the claim should be construed to permit a minor distortion of the opening as the "main body" portions passed through.

Nor is there anything in the specification or the prosecution history of the '464 patent that unmistakably limits the scope of the claim language in the manner suggested by the district court. The fact that depictions of the preferred embodiment do not reveal any distortion in the openings is unsurprising. Although the specification suggests that elongation of the strap is preferably responsible for the dimensioning of the openings, it does not explicitly rule out distorting the openings after elongation. Thus, we conclude that the district court clearly erred in finding that Precision's proposed claim construction was frivolous and that its allegation of infringement of claim 1 was objectively baseless and brought in bad faith.

We also do not agree with the district court that Precision's pre-filing investigation of the infringement allegations as to claim 1 was inadequate. A simple examination of the accused product was sufficient to show that, under Precision's proposed claim construction, the accused

product would infringe claim 1. USA Products concedes that its straps can be elongated to lengthen the openings to some degree, and that a second strap could be passed through an opening, although with some distortion of the opening. If Precision erred, it was in its claim construction, which we have found to be reasonable, not in its investigation under that construction.

We take a different view, however, of Precision's allegations regarding claims 6 and 8. Those claims were to a "cargo securement system" comprising a plurality of elongateable straps used in conjunction. In his pre-filing opinion letter, Precision's counsel acknowledged that he had no evidence that the accused straps were sold with instructions or other directions that they should be used in tandem; instead, the opinion letter simply stated that "claims 6 and 8 might form the basis for a claim of contributory infringement or for infringement by inducement, and so these claims should be pled as well."

Precision never identified any act by the defendants that would constitute contributory infringement or infringement by inducement, and it never identified any evidence that any third party had engaged in infringing conduct at the behest of the defendants. The district court therefore found that the allegations of infringement were baseless and that any reliance on the pre-filing opinion of counsel would have been unreasonable. The opinion, the court observed, "is completely devoid of analysis and fails to provide an objective basis for bringing suit for infringement of the '464 Patent." The inadequate pre-filing investigation demonstrated that the plaintiff "lacked any reasonable basis to accuse the Defendants of infringing Claims 6 and 8."

In its request for reconsideration of the court's attorney fee award, Precision argued that there was a reasonable basis for charging the defendants with indirect infringement, because the defendants "offer[ed] to sell

multiple of the accused straps together," by which Precision appeared to mean that there was more than one such item on the shelf at one time. But that assertion falls far short of the kind of showing required for indirect infringement. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010); *C.R. Bard, Inc. v. Advanced Cardiovascular Sys., Inc.*, 911 F.2d 670, 675 (Fed. Cir. 1990). We therefore uphold the district court's conclusion that the charges of infringement as to claims 6 and 8 were frivolous.

## B

In addition to finding that Precision's charges of infringement were baseless, the court concluded that Precision had engaged in litigation misconduct that provided further justification for the imposition of attorney fees.[2] First, the court ruled that Precision had sought a preliminary injunction based in large part on the theory that the accused straps were manufactured of an inferior material and posed a threat of malfunction. Precision sought to enjoin the defendants from selling the allegedly inferior product because customers could be injured by those products and mistake them for Precision's similar-looking invention. The district court characterized that theory as "frivolous," and we agree. Precision's theory of irreparable harm was based on pure speculation by its owner; the

---

[2] Although litigation misconduct "generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings," *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549 (Fed. Cir. 2011), it also includes "advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith." *Highmark,* 687 F.3d at 1316. The district court found Precision's litigation misconduct to fall into that category.

district justifiably held that speculation plainly insufficient to warrant the exceptional remedy of a preliminary injunction.  Precision provided no foundation from which one could conclude that its owner had any reliable knowledge of the accused strap's quality or durability. We therefore sustain the court's reliance on the improvident preliminary injunction motion as further support for the court's exceptional case finding.

Second, the district court pointed to Precision's efforts to resuscitate its original appeal after filing a late notice of appeal.  Following its out-of-time notice of appeal, Precision asked for one of three alternative forms of relief from the district court:  (1) to characterize its response to the defendants' motion for summary judgment, in which it announced that it intended to appeal after the entry of judgment, as a timely notice of appeal; (2) to amend a previous order to retroactively grant an extension of time for filing its notice of appeal; or (3) to treat its out-of-time notice of appeal as a request for an extension of time to file a notice of appeal because of excusable neglect.  The defendants opposed that motion and moved in this court to dismiss the appeal as untimely.  Before the district court ruled on the motion, this court dismissed Precision's appeal, and the district court then dismissed the motion as moot.

We agree with the district court that the litigation over the timeliness of the notice of appeal was baseless. Precision's summary judgment response, in which it "reserve[d] the right to appeal the Court's order and the entry of judgment" if and when those rulings were entered did not constitute a notice of appeal.[3]  Moreover, the

---

[3] In its motion, and in its opening brief on appeal, Precision cited in support only *Becker v. Montgomery*, 532 U.S. 757, 767 (2001), and *Smith v. Barry*, 502 U.S. 244, 249 (1992).  Those cases do not stand for the proposition that a summary judgment response can serve as a notice

district court lacked the authority to retroactively convert its order regarding the timing of the attorney fee litigation into an order granting an extension to file a notice of appeal that Precision had not moved for. *See* Fed. R. App. P. 4(a)(5)(A). Similarly, at the time of Precision's motion, the district court had no authority to grant a motion for an extension of time to file the notice of appeal based on excusable neglect. *See Shah v. Hutto*, 722 F.2d 1167, 1168-69 (4th Cir. 1983). Precision offered no plausible basis on which the district court could have granted it relief sufficient to resuscitate its appeal. Therefore, although an unsuccessful attempt to rescue an untimely appeal does not constitutes litigation misconduct per se, the district court was justified in finding Precision's arguments to be frivolous and in taking that motion into consideration in its exceptional case finding.

The district court found that Precision's actions unduly extended the proceedings and imposed additional burdens on its opponents. Giving appropriate deference to the district court's superior position to assess the behavior of the litigants before it, we hold that the court did not clearly err in considering the behavior at issue to be litigation misconduct that could properly be taken into account in making an exceptional case determination. While an exceptional case finding that is based on litigation misconduct "usually does not support a full award of attorneys' fees," the court may assess fees to compensate

---

of appeal, regardless of whether it mentions the prospect that an appeal may ultimately be filed. This court has already rejected Precision's argument because adopting such a rule "would render [Federal Rule of Appellate Procedure] 4(a)(1) meaningless." *Precision Links*, 404 F. App'x at 478.

the opposing party for the extra legal effort to counteract the misconduct. *Highmark*, 687 F.3d at 1316. [4]

C

In sum, while we sustain most of the district court's findings, we disagree with its ruling with respect to whether Precision's infringement contention under claim 1 was baseless. Where, as in this case, the "underpinnings" of the district court's fee award "are partially reversed, we may remand for further evaluation by the trial court." *Molins PLC v. Textron, Inc.* 48 F.3d 1172, 1186 (Fed. Cir. 1995). Because the allegations as to claim 1 played a significant part in the litigation before the district court, and in the court's exceptional case determination, we vacate the attorney fee award and remand this case for consideration of "the specific types of conduct" we have identified as potentially supporting a fee order. *Id.* On remand, the district court should determine whether it continues to regard this case as exceptional and deserving of an attorney fee award in light of our holding that Precision's infringement allegations as to claim 1 were not frivolous. If so, it should determine what award amount is appropriate for the remaining conduct.

Each party shall bear its own costs for this appeal.

**VACATED and REMANDED**

---

[4] In its second order on the sanctions issue, the district court referred in passing to Precision's "conduct throughout this litigation" as "demonstrat[ing] a pattern of disregard for the Court's rules and deadlines," but did not point to specific instances of Precision's violations. To the extent that the court on remand elects to base its sanctions order on violations of the court's rules and deadlines, it should make specific findings in that regard.