# United States Court of Appeals for the Federal Circuit

---

**MARCTEC, LLC,**
*Plaintiff-Appellant,*

v.

**JOHNSON & JOHNSON AND CORDIS CORPORATION,**
*Defendants-Appellees.*

---

2010-1285

---

Appeal from the United States District Court for the Southern District of Illinois in Case No. 07-CV-825, Chief Judge David R. Herndon.

---

Decided: January 3, 2012

---

WILLIAM L. MENTLIK, Lerner, David, Littenberg, Krumholz & Mentlik, LLP, of Westfield, New Jersey, argued for plaintiff-appellant. With him on the brief was ROY H. WEPNER. Of counsel were ROBERT G. KRUPKA and CHRISTOPHER R. LIRO, Kirkland & Ellis LLP, of Chicago, Illinois.

GREGORY L. DISKANT, Patterson Belknap Webb & Tyler LLP, of New York, New York, argued for defendants-

appellees. With him on the brief were EUGENE M. GELERNTER, IRENA ROYZMAN, and CHARLES D. HOFFMANN.

———————————————

Before NEWMAN, PROST, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge.*

In this patent case, MarcTec, LLC ("MarcTec") filed suit in the Southern District of Illinois against Cordis Corporation and Johnson & Johnson (collectively, "Cordis")[1] alleging infringement of U.S. Patent Nos. 7,128,753 ("the '753 Patent") and 7,217,290 ("the '290 Patent") (collectively, "the patents-in-suit"). After claim construction, the district court granted Cordis's motion for summary judgment of noninfringement. *MarcTec, LLC v. Johnson & Johnson*, 638 F. Supp. 2d 987 (S.D. Ill. 2009) ("*Noninfringement Order*"). On appeal, this court affirmed the district court's construction of the term "bonded" in the patents-in-suit and its judgment of noninfringement based on that construction. *MarcTec, LLC v. Johnson & Johnson*, 394 Fed. Appx. 685 (Fed. Cir. 2010) ("*Prior Appeal*"). On February 23, 2010, the district court granted Cordis's motion to: (1) declare this case exceptional under 35 U.S.C. § 285; and (2) award Cordis its reasonable attorney and expert witness fees. Specifically, the district court awarded Cordis attorney fees and expenses in the amount of $3,873,865.01, and expert fees and expenses of $809,788.02, for a total award of $4,683,653.03. *MarcTec, LLC v. Johnson & Johnson*, No. 07cv825, 2010 U.S. Dist. LEXIS 15789 (S.D. Ill. Feb. 23, 2010) ("*Exceptional Case Order*"). MarcTec appeals only

———————————————

[1] According to Appellees, Johnson & Johnson is the parent company of Cordis Corporation and is not involved in making or selling the accused product at issue. Consistent with this representation, and for ease of reference, we refer to Appellees as "Cordis."

from the district court's final judgment declaring this case exceptional and awarding attorney and expert fees to Cordis – it does not challenge the reasonableness of the amount of fees awarded. Because the district court did not err in finding this case exceptional under 35 U.S.C. § 285, and did not abuse its discretion in awarding expert witness fees under its inherent authority, we affirm.

BACKGROUND

A. Factual Background

1. The Patents-in-Suit

Dr. Peter Bonutti is an orthopedic surgeon and is a named inventor on numerous patents, including the patents-in-suit. The '753 Patent, which is entitled "Surgical Devices Having a Polymeric Material with a Therapeutic Agent and Methods for Making Same," issued on October 31, 2006. The '290 Patent, which issued on May 15, 2007, is entitled "Surgical Devices Containing a Heat Bondable Material with a Therapeutic Agent." The patents-in-suit have been assigned to Dr. Bonutti's research company – MarcTec.

As this court noted in the prior appeal, the patents-in-suit have identical specifications and are "directed to a surgical implant in which a polymeric material is bonded by heat to an expandable implant, where the polymer includes a therapeutic agent such as an antibiotic." *Prior Appeal*, 394 Fed. Appx. at 686. Importantly, both patents provide for "heat bondable material" that is "bonded" to a surgical device or implant.

a. The Claims at Issue

MarcTec alleged that Cordis infringed at least Claims 1, 3, and 4 of the '753 Patent. Claim 1, the only independent claim of the '753 Patent, recites:

> A surgical device for implantation in a body comprising: an implant, at least a portion of which is expandable; and a polymeric material *bonded* to the implant, wherein the polymeric material is thermoplastic, includes a therapeutic agent, *is non-flowable and non-adherent at room temperature, and becomes flowable, tacky, and adherent upon the application of heat.*

'753 Patent col.16 ll. 7-14 (emphases added).

With respect to the '290 Patent, MarcTec alleged that Cordis infringed at least Claims 1-8, 10 and 14. Claim 1, the only independent claim of the '290 Patent, recites, in pertinent part:

> An implant for implantation in a human body comprising: a tubular member having a channel and mechanically expandable upon activation of a delivery mechanism . . . and a first component *bonded* to at least a portion of the tubular member and formed of a *heat bondable material* that includes a therapeutic agent selected from the group consisting of a tissue ingrowth promoter and an antibiotic, wherein the *heat bondable material is non-flowable and non-adherent at room temperature and becomes flowable, tacky, and adherent upon the application of heat.*

'290 Patent col.16 ll.5-26 (emphases added). The parties' dispute focused, in large part, on the emphasized limitations and the proper construction of the term "bonded." The specifications explain that the terms "bondable" or "bondable material" refer "to any material, suitable for use in surgical applications, which can be softened and made flowable by the application of heat, and which, when softened, will become tacky and bond to other

materials and will flow to fill available space." '753 Patent col.3 ll.52-57; '290 Patent col.3 ll.48-53.

### b.   The Prosecution History

Dr. Bonutti, through his attorneys, filed the applications that led to the patents-in-suit in 2002 and 2003. These applications claimed priority from Dr. Bonutti's 1990 patent application, which was entitled "Surgical Devices Assembled Using Heat Bondable Materials." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *5. During prosecution, the Patent and Trademark Office ("PTO") rejected Dr. Bonutti's proposed claims as invalid over U.S. Patent No. 5,102,417 ("the '417 Patent"), which issued to Dr. Julio Palmaz, "the inventor of the balloon-expandable stent." *Id.*

In response to the examiner's rejection, Dr. Bonutti explained that the '417 Patent teaches "an absorbable polymer coating placed upon wall surfaces of tubular shaped members." Joint Appendix ("J.A.") 929. In contrast, Dr. Bonutti's claimed "implant includes a heat bondable material which is bonded to an implant by the application of heat." *Id.* Based on the rejection, Dr. Bonutti, through his attorneys, amended his patent claims to highlight the fact that the material bonded to the claimed implant "is non-flowable and non-adherent at room temperature and becomes flowable, tacky, and adherent upon the application of heat." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *6.

Dr. Bonutti also distinguished the '417 Patent on grounds that it discloses "an expandable intraluminal vascular graft, or expandable prosthesis for a body passageway . . . . Applicants, on the other hand, disclose, *inter alia*, an assembly for use in surgical applications in humans." J.A. 928. During claim construction, the district court construed this distinction as a representa-

tion that Dr. Bonutti's invention did not include "intraluminal grafts" (i.e., stents). *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at \*5.

## 2.   The Cypher Stent

Cordis develops, manufactures, and sells products that are used to treat coronary artery disease, including the accused Cypher stent. The Cypher stent is a balloon expandable drug-eluting stent which utilizes technology invented by Dr. Palmaz – "the same technology that Dr. Bonutti disclaimed to obtain allowance." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at \*7. At this stage of the proceedings, it is undisputed that the Cypher's drug/polymer coating is sprayed onto the stent at room temperature and bonds to it at room temperature – not by the application of heat. *Prior Appeal*, 394 Fed. Appx. at 686.

## B.   Procedural History

On November 27, 2007, MarcTec filed suit against Cordis alleging that the Cypher stent infringes the '753 Patent and the '290 Patent. In response, Cordis: (1) denied infringement; and (2) asserted counterclaims seeking declaratory judgment that the patents-in-suit are invalid and not infringed.

## 1.   Claim Construction

On February 19, 2009, the district court conducted a Markman hearing. In its claim construction briefing and at the hearing, MarcTec told the court that no construction of the disputed claim terms was needed because each term had a plain and ordinary meaning. In fact, during the Markman hearing, counsel for MarcTec instructed the court that it should focus on the claim language and look to the specification only if there is ambiguity in that language.

On March 31, 2009, the district court issued its claim construction order. *MarcTec, LLC v. Johnson & Johnson*, No. 07cv825, 2009 U.S. Dist. LEXIS 27011 (S.D. Ill. Mar. 31, 2009) ("*Claim Construction Order*"). Consistent with our guidance in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-19 (Fed. Cir. 2005) (en banc), the district court considered the language of the claims, the specification, and statements made during the prosecution history in reaching its conclusions regarding the proper construction of the claims. The district court rejected MarcTec's attempts to minimize the role of the specification, noting that, in *Phillips*, we indicated that the specification "is the single best guide to the meaning of a disputed term." *Claim Construction Order*, 2009 U.S. Dist. LEXIS 27011, at *9 (quoting *Phillips*, 415 F.3d at 1320-21). Based on the specification and prosecution history, the court construed the term "bonded" – which appears in both of the patents-in-suit – to mean bonded by the application of heat. *Id.* at *6-11. Specifically, the court found that: (1) "[h]eat bonding is the only form of bonding taught by the patent"; and (2) during prosecution, Dr. Bonutti limited his claims to heat bonding to overcome the Palmaz '417 Patent. *Id.* at *28-31. Next, the court construed the terms "surgical device" ('753 Patent) and "implant" ('290 Patent) to exclude stents. *Id.* at *6 ("There is no description in the specification of any non-surgical devices, such as stents."). The court further found that Dr. Bonutti "disclaimed stents during prosecution in order to obtain allowance." *Id.* at *13.

### 2. Summary Judgment of Noninfringement

Cordis moved for summary judgment of noninfringement on grounds that: (1) the patents-in-suit require heat to bond a polymeric material to the implant, while the drug/polymer coating on the Cypher stent adheres at room temperature; and (2) it is undisputed that the

Cypher device is a stent, not a surgical device. Based on these differences, Cordis argued that the Cypher stent cannot infringe the asserted claims either literally or under the doctrine of equivalents.

In response, MarcTec argued that Cypher's coating is, in fact, bonded by heat. In support of this position, Marc-Tec offered expert testimony that spraying the drug/polymer coating onto the Cypher stent at nearly the speed of sound would cause an increase in temperature such that heat is involved in bonding the coating to the stent. MarcTec also pointed to evidence that heat is used in some of the manufacturing steps *before* the drug/polymer coating is sprayed onto the Cypher stent. With respect to the disclaimer of stents, MarcTec did not dispute that Cypher is a stent, but instead argued that nothing in the specification or the prosecution history precluded coverage of stents and that the device described in Dr. Palmaz's '417 Patent involved an "expandable intraluminal vascular graft," not a stent.

On June 15, 2009, the district court granted Cordis's motion for summary judgment of noninfringement with respect to all asserted claims of the patents-in-suit. In reaching this decision, the court relied on undisputed evidence that Cypher's drug/polymer coating is sprayed onto the device at room temperature and bonds at room temperature. *Noninfringement Order*, 638 F. Supp. 2d at 1001 ("Undisputed evidence establishes that the polymers in Cypher's drug-eluting coating adhere to the stent at room temperature."). Because the court construed the asserted claims to require bonding by the application of heat, it concluded that the patents-in-suit do not cover the Cypher stent. *Id.* at 1002.

> With respect to MarcTec's proffered expert testimony, the court found that:

> Dr. Sojka's theory that spraying droplets at an unrealistic speed, approaching the speed of sound (and unrelated to anything that happens in the Cypher coating process) would increase the temperature of the droplets – in ways that cannot be measured – for 5 millionths of a second (0.000005 seconds) is an untested and untestable theory that is neither reliable nor relevant to the issues at hand.

*Id.* at 1004. Accordingly, the court excluded Dr. Sojka's testimony on grounds that it was unreliable and thus inadmissible under *Daubert v. Merrill Dow Pharms. Inc.*, 509 U.S. 579 (1993), and Rule 702 of the Federal Rules of Evidence. *Id.* at 1004-1005. The court also rejected MarcTec's arguments that the use of heat at an earlier stage of the Cypher manufacturing process could satisfy the heat bonding limitations. Specifically, the court found that use of heat at other stages of the process has no "bearing on whether the polymers are bonded to the device by the application of heat," and that MarcTec's expert testimony to the contrary ignored the court's claim construction, "is irrelevant to the question of infringement," and is inadmissible under *Daubert*. *Id.* at 1006.

As a separate and independent basis for granting summary judgment, the court found that MarcTec could not show infringement because: (1) it disclaimed stents during prosecution to overcome the '417 Palmaz Patent; and (2) the Cypher device is a stent. *Id.* at 998-99.

### 3. The Prior Appeal

MarcTec appealed the district court's decision granting summary judgment in favor of Cordis.[2] In an August

---

[2] In an order dated September 23, 2009, the district court granted the parties' joint request to dismiss Cordis's

2010 decision, we affirmed: (1) the district court's construction of the term "bonded"; and (2) the judgment of noninfringement based on that construction. *Prior Appeal*, 394 Fed. Appx. at 685. First, we found that the "specification's discussion of bonding, in the context of the invention, is uniformly directed to heat bonding." *Id.* at 687. Looking to the prosecution history, we noted that, "[d]uring prosecution of the patents, the Applicants limited the claimed 'bonding' to heat bonding, in order overcome [the Palmaz prior art]," and that "[l]imitations clearly adopted by the applicant during prosecution are not subject to negation during litigation." *Id.* As such, we found that prosecution history estoppel prevented MarcTec from asserting a claim scope that includes bonding without the application of heat. Although MarcTec argued that the doctrine of claim differentiation undermined the district court's claim construction because dependent Claim 8 of the '753 Patent "specifically describes the polymeric material as one that 'is bonded to the implant by the application of heat,'" we rejected this argument on grounds that claim differentiation cannot broaden claims beyond the scope that is consistent with the specification and prosecution history. *Id.* Finally, we noted that, although MarcTec argued that heat is used in making the Cypher stent, it failed to produce sufficient evidence of the use of heat during the bonding process to avoid summary judgment. *Id.*

As Cordis correctly notes, because we affirmed the district court's construction that "bonded" means bonded by the application of heat, we did not reach the district

---

pending invalidity counterclaims, without prejudice, and to enter a final judgment so that the case could proceed on appeal. *MarcTec, LLC v. Johnson & Johnson*, No. 07cv825, 2009 U.S. Dist. LEXIS 87426, *5 (S.D. Ill. Sept. 23, 2009).

court's alternative basis for granting summary judgment, which involved MarcTec's disclaimer of stents.

### 4. Motion for Attorney and Expert Fees

After the district court granted summary judgment in its favor, Cordis moved to have MarcTec's suit declared exceptional under 35 U.S.C. § 285, and to be compensated for its reasonable attorney and expert witness fees. In its motion, Cordis argued that MarcTec engaged in litigation misconduct by, among other things: (1) misrepresenting claim construction law to avoid intrinsic evidence; (2) mischaracterizing the district court's claim construction; and (3) offering "junk science" that was unreliable, untestable, and had no relevance to this case. Cordis further argued that MarcTec filed a frivolous and baseless lawsuit and acted in bad faith by continuing to pursue its claims without any evidence of infringement.

In a February 23, 2010 decision, which is the subject of the present appeal, the district court agreed with Cordis and declared this case exceptional under § 285. Specifically, the court found that MarcTec's allegations of infringement were "baseless" and "frivolous," and that MarcTec acted in "bad faith" in bringing and maintaining this litigation. *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *24-30. The court criticized MarcTec for ignoring the specification and prosecution history in its claim construction argument, both of which were fatal to MarcTec's proposed construction of the term "bonded." *Id.* at *25. The court found that, even after it had evidence that the Cypher stent's coating is applied at room temperature and does not bond using heat, MarcTec continued to pursue its frivolous case "by relying on mischaracterizations of the claim construction adopted by this Court and expert testimony that did not meet the requirements for scientific reliability or relevance re-

quired by FRE 702 and Daubert." *Id.* at \*26. The court further noted that, "[w]ith Dr. Bonutti having represented to the PTO that the claims exclude stents in order to obtain allowance, MarcTec cannot turn around in litigation and assert the patents-in-suit against the Cypher stent." *Id.* at \*24-25. Finally, the court held that the "fees and expenses incurred by Cordis were reasonable in light of the scope of patent litigation, the magnitude of the damages sought by MarcTec and MarcTec's *litigation misconduct.*" *Id.* at \*28 (emphasis added).

Based on these findings, the district court awarded Cordis $3,873,865.01 in attorney fees and expenses under § 285. In addition, pursuant to its inherent powers, the court awarded Cordis its expert fees in the amount of $809,788.02. MarcTec timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

MarcTec argues that the district court: (1) applied the wrong standard in declaring this case exceptional under 35 U.S.C. § 285; and (2) abused its discretion in awarding expert witness fees. We address each argument in turn. For the reasons explained below, we find no error in the district court's decision and therefore affirm the attorney and expert fees awarded.

A. The District Court Did Not Err in Awarding Attorney Fees Under § 285.

A district court has discretion to award reasonable attorney fees to a prevailing party in a patent case if the court determines that the case is "exceptional." 35 U.S.C. § 285. This discretion is not unbridled, however. *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 543 (Fed. Cir. 2011) (citing *Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009)). Given

the "substantial economic and reputational impact" of an award of attorney fees, we must carefully examine the record to determine whether the trial court clearly erred in finding the case exceptional. *Id.* (quoting *Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme GmbH*, 603 F.3d 943, 953 (Fed. Cir. 2010)).

When deciding whether to award attorney fees under § 285, a district court engages in a two-step inquiry. First, the court must determine whether the prevailing party has proved by clear and convincing evidence that the case is exceptional. *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003); *see also Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1314 (Fed. Cir. 2010) ("The party seeking attorney fees under § 285 must establish, by clear and convincing evidence, that the case is exceptional."). Whether the district court applied the correct legal standard under § 285 is a question this court reviews *de novo*, and we review the court's exceptional case finding for clear error. *Forest Labs.*, 339 F.3d at 1328. If the district court finds that the case is exceptional, it must then determine whether an award of attorney fees is justified. *Cybor Corp. v. Fas Techs. Inc.*, 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc). We review the district court's decision to award attorney fees under an abuse of discretion standard. *Id.*

A case may be deemed exceptional under § 285 where there has been "willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Federal Rule of Civil Procedure 11, or like infractions." *Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1321-22 (Fed. Cir. 2006). Where, as here, the alleged infringer prevails in the underlying action, factors relevant to determining whether a case is exceptional include "the closeness of the question, pre-

filing investigation and discussions with the defendant, and litigation behavior." *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008). Where a patentee "prolongs litigation in bad faith, an exceptional finding may be warranted." *Id.*

Absent litigation misconduct or misconduct in securing the patent, a district court can award attorney fees under § 285 only if the litigation is both: (1) brought in subjective bad faith; and (2) objectively baseless. *Old Reliable*, 635 F.3d at 543-44 (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). Under this standard, a patentee's case "must have no objective foundation, and the plaintiff must actually know this." *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011). Whether a case is objectively baseless requires an "objective assessment of the merits." *Id.* (quoting *Brooks Furniture*, 393 F.3d at 1382).

On appeal, MarcTec argues that the district court applied the wrong standard in declaring this an exceptional case under § 285. Specifically, MarcTec claims that the district court erred as a matter of law when it deemed this case exceptional "without first finding that the litigation was brought in subjective bad faith, given the fact that inequitable conduct by MarcTec was never alleged, and given the fact that the district court consciously declined to find MarcTec guilty of litigation misconduct." Appellant's Br. 19. In response, Cordis argues that the district court correctly deemed this case exceptional because the court found that "MarcTec acted in 'bad faith' in pursuing its baseless allegations and engaged in litigation misconduct." Appellee's Br. 28.

For the reasons set forth below, we agree with Cordis and find that the district court's decision, when read in its entirety, reflects its determination that MarcTec: (1) acted

in bad faith in filing a baseless infringement action and continuing to pursue it despite no evidence of infringement; and (2) engaged in vexatious and unjustified litigation conduct that unnecessarily prolonged the proceedings and forced Cordis to incur substantial expenses.

### 1.  Subjective Bad Faith & Objectively Baseless

In its decision awarding fees, the district court stated as follows:

> MarcTec contends that subjective bad faith is needed to find a case exceptional under § 285. That is not the law. As discussed above, evidence that a plaintiff has 'brought a baseless or frivolous suit . . . is a sufficient basis to require a district court to deem the case exceptional under § 285.'

*Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *20 (quoting *Digeo, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1367 (Fed. Cir. 2007)). Based on this language, MarcTec argues that the district court applied the wrong law by failing to recognize that, absent litigation misconduct, a case cannot be deemed exceptional without a finding of subjective bad faith. Specifically, MarcTec argues that: (1) Cordis failed to prove, by clear and convincing evidence, that MarcTec acted with *subjective* bad faith; (2) the court ignored MarcTec's evidence that it acted in good faith; and (3) the litigation was not "objectively baseless" because MarcTec advanced "substantial and legitimate positions on claim construction." Appellant's Br. 20, 25. We disagree.

Regardless of the district court's description of the law, it is clear that the court made sufficient factual findings to support the conclusion that MarcTec filed an objectively baseless lawsuit in bad faith. Indeed, the district court specifically found that MarcTec's allegations

of infringement were "baseless" and "frivolous" and that it acted in "bad faith in bringing and pressing this suit when it had no basis for asserting infringement." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at \*24-30. Although the district court used the term "bad faith," and did not specifically state that the bad faith found was "subjective," the court's language, and its express findings of fact, are consistent with and fully support a finding of subjective bad faith. *See Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 810 (Fed. Cir. 1990) ("Under the heading 'Bad Faith Litigation,' the court there set forth in detail an overwhelming basis for finding that OxyTech brought and maintained this suit in bad faith. Though the court did not expressly find that OxyTech *knew* its suit was baseless, many of its findings are compatible with and only with that view."). And, importantly, at oral argument, counsel for both parties agreed that courts normally use the term "bad faith" to mean *subjective* bad faith.[3]

The district court made several findings supporting its conclusion that MarcTec knew its allegations were baseless but pursued them anyway. *See Forest Labs.*, 339 F.3d at 1330. Specifically, the court found that:

---

[3]    When asked if there is such a thing as "objective bad faith," counsel for Cordis responded: "Judge, I don't even know what objective bad faith is. To me, the difference in the court's standard is objectively baseless . . . subjectively bad faith -- bad faith is what's in one's mind what's in one's heart." Oral Argument at 18:47, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2010-1285/all. Likewise, when asked whether bad faith is necessarily subjective, rather than objective, counsel for MarcTec responded: "I believe it is your Honor. I believe that bad faith, when it's used in the cases . . . references in the case law which don't use the word subjective do mean subjective bad faith." *Id.* at 28:55.

- "Dr. Bonutti amended his claims during patent prosecution to make clear that his invention required the application of heat to a heat-bondable material . . . Documents produced to MarcTec in discovery show that Cypher's polymer/drug coating is applied and adheres at room temperature *without the use of heat*." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, *8 (emphasis added).

- "With Dr. Bonutti having represented to the PTO that the claims exclude stents in order to obtain allowance, MarcTec cannot turn around in litigation and assert the patents-in-suit against the Cypher stent." *Id.* at *24-25.

- "[E]ven after MarcTec had documentary evidence establishing that heat-bonding – which Dr. Bonutti told the Patent Office is required – is not used in the Cypher manufacturing process and Cordis moved for summary judgment on that ground, MarcTec pursued its frivolous action by relying on mischaracterizations of the claim construction adopted by this Court and expert testimony that did not meet the requirements for scientific reliability or relevance required by FRE 702 and Daubert." *Id.* at *26.

Each of these findings supports the conclusion that MarcTec subjectively knew that it had no basis for asserting infringement and therefore pursued this litigation in bad faith. Although MarcTec argues that it had no way of knowing that the district court would disagree with its proposed claim construction, no reasonable application of the principles this court enunciated in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-19 (Fed. Cir. 2005) (en banc)

supports its position. As Cordis correctly argues, MarcTec cannot claim to be ignorant of the references to heat in the claims, the language in the specification discussing the importance of heat to the bonding process, or Dr. Bonutti's statements to the PTO. Indeed, as we noted in the prior appeal, the doctrine of prosecution history estoppel prevented MarcTec from asserting its construction of the term "bonded." After careful consideration and review of the record, we agree with the district court that MarcTec's proposed claim construction, which ignored the entirety of the specification and the prosecution history, and thus was unsupported by the intrinsic record, was frivolous and supports a finding of bad faith.

MarcTec next argues that, because we did not describe its positions as frivolous or made in bad faith in the prior appeal, we cannot endorse the district court's decision to do so in this context. Specifically, MarcTec points to language in our prior appeal where we addressed its claim differentiation argument. MarcTec took the position that the asserted claims did not require heat because "dependent claim 8 of the '753 patent specifically describes the polymeric material as one that 'is bonded to the implant by the application of heat.'" *Prior Appeal*, 394 Fed. Appx. at 687. Although we acknowledged that the district court's construction of "bonded" might render some language in Claim 8 superfluous, we rejected the conclusion that MarcTec's construction could be rendered viable on that ground alone, noting that "the doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence." *Id.* (quoting *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998)). Therefore, despite MarcTec's suggestions to the contrary, we rejected its claim differentiation argument and did so

readily; nothing in our discussion of that issue can be read as an endorsement of that argument or a finding that it was made in good faith. Simply put, the issue of bad faith was not before us and not addressed in the earlier appeal.

While it is clear that "[d]efeat of a litigation position, even on summary judgment, does not warrant an automatic finding that the suit was objectively baseless," here the record supports the district court's finding that MarcTec pursued objectively baseless infringement claims. *See Aspex*, 605 F.3d at 1315. The district court found that the "written description and prosecution histories of the patents-in-suit, and other documentary evidence, demonstrate that MarcTec's patent infringement case was baseless." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *24. The court further found that, because MarcTec disclaimed stents to overcome the prior art, it could not turn around and assert infringement against the Cypher stent. Because the specification and prosecution history clearly refute MarcTec's proposed claim construction, the district court did not err in finding that MarcTec's infringement claims were objectively baseless. *See Netcraft Corp. v. eBay, Inc.*, 549 F.3d 1394, 1398 (Fed. Cir. 2009) (noting that disputed claim language "must be read in the context of the entire specification and prosecution history"); *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326 (Fed. Cir. 2011) ("[B]ecause the written description clearly refutes Eon-Net's claim construction, the district court did not clearly err in finding that Eon-Net pursued objectively baseless infringement claims.").

MarcTec's proposed claim construction was so lacking in any evidentiary support that assertion of this construction was unreasonable and reflects a lack of good faith. And, MarcTec's decision to continue the litigation after claim construction further supports the district court's

finding that this is an exceptional case. Because MarcTec has failed to show that the district court's findings regarding bad faith and objective baselessness were clearly erroneous, we affirm the court's decision awarding fees on that ground.

## 2. Litigation Misconduct

In addition to finding that MarcTec filed an objectively baseless lawsuit in bad faith, the district court further found that MarcTec engaged in litigation misconduct. This finding provides a separate and independent basis for the court's decision to award attorney fees. Indeed, it is well-established that litigation misconduct and "unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285." *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1106 (Fed. Cir. 2003) (citation omitted). Litigation misconduct typically "involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings." *Old Reliable*, 635 F.3d at 549.

Here, the district court found that the "fees and expenses incurred by Cordis were reasonable in light of the scope of patent litigation, the magnitude of the damages sought by MarcTec and MarcTec's *litigation misconduct*." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *28 (emphasis added). Despite this language, MarcTec argues that the district court actually did not find that it engaged in litigation misconduct. Specifically, MarcTec points out that the district court: (1) did not adopt Cordis's proposed conclusions of law with respect to litigation misconduct; and (2) never identified any particular acts that it felt constituted misconduct. In response, Cordis argues that the district court's "choice of which proposed findings to adopt reflects nothing more than its recognition that overlapping findings on this

subject were not needed." Appellee's Br. 49-50. And, Cordis argues there are numerous factual findings describing MarcTec's improper litigation tactics. We agree with Cordis, and find that the district court's decision, taken in its entirety, reflects its conclusion that MarcTec engaged in improper conduct sufficient to warrant an award of attorney fees and expenses. Specifically, the district court's decision reveals that MarcTec engaged in litigation misconduct when it: (1) misrepresented both the law of claim construction and the constructions ultimately adopted by the court; and (2) introduced and relied on expert testimony that failed to meet even minimal standards of reliability, thereby prolonging the litigation and the expenses attendant thereto.

With respect to claim construction, MarcTec argues that it was not improper for it to urge the district court to adopt plain meaning constructions of the disputed claim terms. While we agree that claim construction necessarily involves consideration of the plain meaning of disputed terms, here, as noted, MarcTec ignored language in the specification and statements made during prosecution that directly contradicted the plain meaning arguments it advanced. In fact, as the district court found, counsel for MarcTec misrepresented the law on claim construction and encouraged the court to ignore the specification unless it found an insoluble "ambiguity" in the claim language. *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *9 ("The Federal Circuit has rejected this approach and held that the specification is 'the single best guide to the meaning of a disputed term.'") (quoting *Phillips*, 415 F.3d at 1320-21). While standing alone, such mischaracterizations of *Phillips* would not warrant an award of attorney fees, when coupled with MarcTec's decision to advance frivolous and unsupported allegations of infringement premised on mischaracterizations of the

claim constructions adopted by the trial court, this misdirection lends support to the district court's finding of litigation misconduct.[4]

Next, the district court found that MarcTec relied upon inadmissible expert testimony that was "untested and untestable" and did not meet the scientific reliability standards set forth in *Daubert*. In particular, the court excluded MarcTec's expert's theory that spraying the drug/polymer coating onto the Cypher stent at nearly the speed of sound would generate heat. *Id.* at *13-16. Although we agree with MarcTec that exclusion of expert testimony under *Daubert* does not automatically trigger a finding of litigation misconduct, and in most cases likely would not do so, we find that the circumstances of this case were sufficiently egregious to support an award of attorney fees.

Finally, although the district court did not adopt all of Cordis's proposed findings on litigation misconduct, the court's decision to remove certain language could have been motivated by a desire to avoid duplicity or to avoid undue harshness. It is undisputed, however, that the district court used the words "litigation misconduct" in its order and set forth a litany of conduct in its factual findings which it identified as mischaracterizations of the facts, the law, and the court's own rulings.

---

[4] Most pointedly, MarcTec argued that the court's construction did not actually require use of heat at the point when the polymers were applied to the stent, only that heat was needed to facilitate the manufacturing process. Based on this faulty premise, MarcTec argued that infringement could occur as long as heat was used at *any point* during the manufacturing process – even long before or long after bonding of the polymers to the stent occurred. Even a cursory review of the record reveals how frivolous this contention was when made. The district court correctly concluded as much.

Under the circumstances of this case, we find that the district court's findings are sufficient to support the conclusion that MarcTec engaged in litigation misconduct. MarcTec not only initiated a frivolous lawsuit, it persisted in advancing unfounded arguments that unnecessarily extended this litigation and caused Cordis to incur needless litigation expenses. This vexatious conduct is, by definition, litigation misconduct, and provides a separate and independent basis supporting the district court's determination that this case is exceptional. Accordingly, we find that the district court did not abuse its discretion in awarding the fees requested.

### B. The District Court Did Not Abuse its Discretion in Awarding Expert Fees.

A district court has inherent authority "to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute." *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008). Use of this inherent authority is reserved for cases where the district court makes a "finding of fraud or bad faith whereby the 'very temple of justice has been defiled.'" *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). Accordingly, not every case that qualifies as exceptional under § 285 will also qualify for sanctions under the court's inherent power. *Id.* We review a district court's decision to award expert fees under its inherent authority for an abuse of discretion. *Takeda*, 549 F.3d at 1391.

In its order awarding fees, the district court found that: (1) "[e]xpert fees are recoverable in patent cases where, as here, there was bad faith, such as the filing of a frivolous action"; and (2) "[b]ecause of MarcTec's bad faith in bringing and pressing this suit when it had no basis for

asserting infringement, Cordis is awarded its expert fees of $809,788.02 in the exercise of this Court's inherent power." *Exceptional Case Order*, 2010 U.S. Dist. LEXIS 15789, at *30.

On appeal, MarcTec argues that the district court abused its discretion in awarding expert fees because: (1) it "was not even accused of committing or attempting fraud on the court or abusing the judicial process, or otherwise defiling the judicial system"; and (2) the district court did not find that § 285 was inadequate to "remedy MarcTec's alleged misconduct." Appellant's Br. 50. In response, Cordis argues that the sums it expended on experts were only necessary because MarcTec "pressed forward after receiving documentary evidence that refuted its allegations, and because MarcTec had its experts proffer junk science, including a bogus theory about supposed temperature changes that were not capable of being detected and an unrealistic test having no relation to the accused product." Appellee's Br. 29. We agree with Cordis.

Although, as a general matter, it is a better practice for a district court to analyze expert witness fees separately and to explain why an award of attorney fees under § 285 is insufficient to sanction the patentee, we find that the circumstances in this case justify the district court's decision granting expert witness fees. *See Takeda*, 549 F.3d at 1392 (Bryson, J., concurring) ("Where, as here, the district court's award of attorney fees under section 285 and expert witness fees under its inherent authority are predicated on the same conduct, the district court must offer a reasoned explanation for why the award of attorney fees and expenses under section 285 is not a sufficient sanction for the conduct in question."). This is particularly true given that: (1) Cordis was forced to incur expert witness expenses to rebut MarcTec's unreliable and

irrelevant expert testimony which was excluded under *Daubert*; and (2) the amount Cordis was required to expend on experts was not compensable under § 285. Because MarcTec's vexatious conduct and bad faith increased the cost of litigation in ways that are not compensated under § 285, we find that the district court did not abuse its discretion in awarding expert fees to Cordis.

CONCLUSION

For the foregoing reasons, and because we find that MarcTec's remaining arguments are without merit, we affirm the district court's determination that this case is exceptional within the meaning of 35 U.S.C. § 285, and its award of attorney fees and expert fees to Cordis in the amount of $4,683,653.03.

**AFFIRMED**