O’MALLEY, Circuit Judge.
Synthes USA, LLC and DePuy Synthes Products, LLC (collectively, “Synthes”)[1] appeal from a jury verdict finding that Spinal Kinetics, Inc. (“SK”) did not infringe claims 29-31 (“asserted claims”) of U.S. Patent No. 7,429,270 (“the '270 patent”) and that the claims were invalid for lack of written description. SK cross-appeals contending that the district court erred in denying SK’s motion for fees under 35 U.S.C. § 285. Both appeals are timely, and we have jurisdiction under 28 U.S.C. § 1295(a)(1). For the reasons below, we affirm, the jury verdict of invalidity *1335 for lack of written description and affirm the district court’s denial of SK’s request for attorneys’ fees.
I. Background
A. The '270 Patent and Accused Devices
Synthes filed this action alleging that SK’s M6-C and M6-L intervertebral implants infringed claims 29-31 of the '270 patent. See Synthes (USA) v. Spinal Kinetics, Inc., 5:09-cv-1201-RMW, ECF No. 1 (N.D.Cal. Nov. 12, 2008). The '270 patent originated from a German language PCT application filed on April 14, 2003. The asserted claims were added by amendment on February 19, 2008. The 270 patent is directed to an “Intervertebral Implant,” which is a prosthetic device designed to replace a diseased or degenerated disc located between adjacent vertebrae of the human spine:
Spinal Cord
[[Image here]]
*1336 A healthy disc (depicted below) has a fibrous, outer band called the annulus fibro-sus, which surrounds a central, gel-like substance called the nucleus pulposus:
[[Image here]]
A natural disc provides shock-absorbing functions and helps maintain proper spacing, stability, and motion within the spine. Artificial discs attempt to replace some or all of these functions. Claim 29, the independent claim from which claims 30 and 31 depend, provides:
29. An intervertebral implant for implantation between an upper and lower vertebrae, the implant having a central axis, the implant comprising:
a first substantially rigid bone contacting plate having an external surface extending generally transversely to the central axis for contacting at least a portion of the upper vertebra;
a second substantially rigid bone contacting plate having an external surface extending generally transversely to the central axis for contacting at least a portion of the lower vertebra;
a third plate operatively coupled to the first bone contacting plate, the third plate including a plurality of openings; a fourth plate operatively coupled to the second bone contacting plate, the fourth plate including a plurality of openings; a central part substantially located between the third and fourth plates, the central part including a flexible core and a fiber system, wherein the core is substantially cylindrical and includes a top surface and a bottom surface, the top surface of the core being in contact with the third plate and the bottom surface of the core being in contact with the fourth plate, and wherein the fiber system at least partially surrounds the core, and is at least partially received within the plurality of openings formed in the third and fourth plates so that the fiber system is joined to the third. and fourth plates; and
an elastic sheathing body at least partially surrounding the fiber system and the core, and connected to the third and fourth plates.
'270 patent, col. 8, ll.19-48.
Claim 30 requires that the first and second bone contacting plates recited in claim 29 be made from titanium or titanium alloy. Id. at col. 8, ll. 49-51. Claim 31 requires the fiber system recited in claim 29 to be constructed of an “ultra high molecular weight polyethylene material.” Id. at col. 8, 11. 52-54. According to Synthes, claims 30 and 31 stand or fall with claim 29. The main features of claim 29 are depicted in Figures 3 and 4 of the '270 patent:
*1337 [[Image here]]
SK manufactures the M6-C (cervical) and M6-L (lumbar) discs in California and sells them abroad. The United States Food and Drug Administration has not approved the M6 devices for sale in this country. The M6-C and M6-L are depicted below:
*1338 [[Image here]]
Except for the shape of the cores, the M6-C and M6-L are identical for purposes of this litigation.
B. Proceedings Below
During the course of the litigation, the district court construed a number of terms contained in claim 29 of the '270 patent. Of particular relevance to the current appeal is the court’s construction of the phrase “the third plate including a plurality of openings.”[2] Synthes, ECF No. 84 (N.D. Cal. June 23, 2010). SK argued that “plurality of openings” should be limited to grooves on the circumference of the claimed cover plates. Id. SK’s argument was predicated on its contention that the written description of the '270 patent does not describe a structure with holes or slots in the cover plates, but only describes grooves on the circumference of the cover plate that radially penetrate ihto the lateral surface of the plate. Id. Those grooves are depicted as element 18 in Figure 2 of the '270 patent:
*1339 [[Image here]]
See '270 patent, col. 5,ll.11-13.
Synthes, on the other hand, contended that the claim was not so limited, and urged the court for a broader construction: “a third plate including two or more openings.” Id. While the district court did not adopt Synthes’ construction wholesale, it did side with Synthes regarding the breadth of the phrase and construed it as “the third plate including two or more openings to allow the fiber system to be joined or anchored to that plate.” Id. The court concluded that claim 29 requires openings in the cover plates, or third and fourth plates, which make it possible for the claimed fiber system to be joined or anchored to the plates. Id.
The importance of the “plurality of openings” limitation to Synthes’ infringement case is evident when viewed in light of the accused devices. SK devices do not employ peripheral grooves, but instead use slots, or openings, on the cover plates. The M6 lumbar device uses trapezoidal slots, while the cervical device uses elongated circle slots:
[[Image here]]
Lumbar
[[Image here]]
Cervical
*1340 Joint Appendix (“J.A.”) at 24515; 24172. According to SK, Synthes amended the application that led to the '270 patent during prosecution to add claims 29-31 only after the M6 devices were on the market and Synthes was advised that SK’s M6 devices were a significant improvement in the technology. See J.A. at 20676; 25947.
After the court construed the disputed terms of the patent, it entertained motions for summary judgment. The district court granted Synthes’ motions dismissing SK’s enablement, indefiniteness, and utility defenses, but denied Synthes’ motion to dismiss SK’s written description and best mode defenses. See Synthes, ECF No. 298 (N.D.Cal. Aug. 19, 2011). The parties proceeded to trial on the remaining issues. After hearing all of the evidence, followed by four days of deliberation, the jury concluded that SK’s M6 devices did not infringe the asserted claims of the '270 patent and that SK proved by clear and convincing evidence that claim 29, and consequently claims 30 and 31, were invalid for a lack of written description support. See Synthes, ECF No. 497 (N.D.Cal. Dec. 13, 2011).
Synthes then moved the district court for judgment as a matter of law (“JMOL”) or new trial as to literal infringement and invalidity, among other things. Id. SK moved for attorneys’ fees, among other things. Id. The district court denied Synthes’ motion for JMOL or new trial as to literal infringement, but granted-in-part Synthes’ motion regarding invalidity for lack of written description. See Synthes, Inc. v. Spinal Kinetics, Inc., ECF No. 577, 2012 WL 4483158 (N.D.Cal. Sept. 27, 2012). According to the district court, the jury found the '270 patent invalid for lack of written description on four claim limitations: (1) “plate including a plurality of openings”; (2) “wherein the core is substantially cylindrical”; (3) “flexible core”; and (4) “substantially rigid bone contacting plate.” Id. Synthes argued that SK failed to produce substantial evidence as to all four. Id. The district court agreed with Synthes that SK failed to carry its burden on “substantially cylindrical core” and “substantially rigid bone contacting plate.” Id. The court affirmed the jury verdict, however, on “plate including a plurality of openings” and “wherein the core is substantially cylindrical.” Id. The court also denied SK’s motion for attorneys’ fees under 35 U.S.C. § 285. Id. Synthes then filed this appeal and SK cross-appealed.
II. Discussion
The district court found substantial evidence supported the jury verdict that the term “plate including a plurality of openings” lacked written description support, rendering the asserted claims invalid. The district court also concluded that SK failed to demonstrate that it was entitled to attorneys’ fees. We agree with the district court on both counts. Consequently, we find the remaining issues on appeal moot.
A. Legal Standard
We review the denial of JMOL or request for a new trial after a jury verdict under the same standard of review as the trial court. Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1309 (Fed.Cir.2009) (citing Wechsler v. Macke Int’l Trade, Inc., 486 F.3d 1286, 1290 (Fed.Cir.2007)). The grant or denial of JMOL is a procedural issue not unique to patent law; therefore, we apply the law of the relevant regional circuit. Id. (citing Summit Tech., Inc. v. Nidek Co., 363 F.3d 1219, 1223 (Fed.Cir.2004)). The Ninth Circuit reviews denial of JMOL de novo. First Nat’l Mortg. Co. v. Fed. Realty Inv. Trust, 631 F.3d 1058, 1067 (9th Cir.2011) (citing Lakeside-Scott v. Multnomah Cnty., 556 F.3d 797, 802 (9th Cir.2009)). We must draw all reasonable inferences in favor of *1341 the jury’s verdict, and the evidence is viewed in the light most favorable to the non-moving party. Id. The jury’s “verdict will be upheld if it is supported by substantial evidence, ‘even if it is also possible to draw a contrary conclusion.’ ” Id. at 1067-68 (quoting Pavao v. Pagay, 307 F.3d 915, 918 (9th Cir.2002)).
1. Written Description
The district court, at Synthes’ urging, broadly construed the phrase “third plate including a plurality of openings,” which appears in claim 29. The relevant claims, moreover, include broad language added during prosecution. Synthes amended the application that became the '270 patent to add the concept of “openings” in claim 29 almost five years after the application was originally filed, and after SK’s M6 devices were already on the market. See J.A. at 20676; 25157-25179. The original disclosure claimed and disclosed a plurality of grooves and a plurality of channels, but did not describe “openings” generally. See id. While broadening claims during prosecution to capture a competitor’s products is not improper, the written description must support the broadened claims. See Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 909 n. 2 (Fed.Cir.2004) (“[I]t is not improper for an applicant to broaden his claims during prosecution in order to encompass a competitor’s products, as long as the disclosure supports the broadened claims.”) (citing Kingsdown Med. Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 874 (Fed.Cir.1988)). After hearing the testimony of SK’s expert, Dr. Lee, and its research and development manager, Mr. Koske, indicating that the as-filed disclosure did not demonstrate possession of an intervertebral implant that employed any sort of openings anywhere on the cover plates, the jury determined that the '270 patent was invalid under § 112, paragraph 1. As the district court did before us, we find -that substantial evidence supports that conclusion.
Section 112, paragraph one of Title 35 requires a patentee to provide a written description that allows a person of skill in the art to recognize that the patentee invented what is claimed.[3] See Ariad Pharms., Inc. v. Eli Lilly & Co., 598 F.3d 1336, 1351 (Fed.Cir.2010) (en banc) (citing Vas-Cath Inc. v. Mahurkar, 935 F.2d 1555, 1562-63 (Fed.Cir.1991)). “[T]he test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor ha[d] possession of the claimed subject matter as of the filing date.” Id. Determination of whether a patent satisfies the written description requirement is a question of fact. Id. (citing Capon v. Eshhar, 418 F.3d 1349, 1357-58 (Fed.Cir.2005)). The “level of detail required to satisfy the written description requirement varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology.” Id.
Synthes contends that the jury’s verdict of invalidity for a lack of adequate written description was not supported by substantial evidence. Synthes asserts that the '270 patent’s written description does not limit the claimed “plurality of openings” to peripheral grooves. Synthes next argues that the testimony and evidence presented by SK via its expert and fact witnesses regarding the “plurality of openings” limitation did not support the jury’s verdict. Synthes also disputes the district court’s post-trial conclusion that SK produced evi *1342 dence demonstrating that the field of in-tervertebral implants was sufficiently unpredictable such that a disclosure of one species of openings would not be enough to claim the entire genus. We disagree on all counts.
The '270 patent’s written description, filed on April 14, 2003, discloses that the fiber system may be anchored by various means. See '270 patent, col. 2, 11. 4-6. The written description then discloses a series of examples of how the fiber system may be anchored on the cover plates, i.e., third and fourth plates. All of these examples employ “grooves,” not slots or openings on the plates. See e.g., '270 patent, col. ,3, ll. 22-26 (describing anchoring the fiber system “through grooves and over the external surfaces of the cover plates from one groove to another one”); id., col. 3, ll. 32-34 (anchoring the fiber system by using “a wedge-shaped construction of the grooves”); id., col. 3, 11. 36-41 (describing the cover plates as comprising “a lateral surface [with] grooves distributed on the circumference and radially penetrating into the lateral surfaces”); id., col. 5, ll. 10-14 (disclosing an embodiment wherein the cover plates have “grooves distributed on the circumference and radially protruding into the lateral surfaces”); id., col. 5,ll. 65-67 (describing an embodiment with the fiber system “anchored on the cover plates by means of grooves”). Claims 29-31 recite a “plurality of openings” used to “join” or “anchor” the fiber system to the cover plates, which Synthes contends supports any type of openings located anywhere on the plates. The written description, however, never discloses anything broader than using grooves to anchor the fiber system to the cover plates.
The parties appear to agree that “grooves” are a species of “opening,” but do not agree that “grooves” constitute an adequate disclosure to claim all openings that may be used in the cover plates to anchor the fiber system. In other words, the jury was asked to determine whether the written description disclosure of “grooves” “reasonably convey[ed] to those skilled in the art that the inventor had possession of [an intervertebral implant that could utilize any sort of opening located anywhere on the cover plates to anchor the fiber system] as of the filing date.” Ariad, 598 F.3d at 1351. The jury did not believe so and, when all reasonable inferences are drawn in favor of the jury verdict, we must affirm that decision.
SK presented testimony regarding the plurality of openings limitation via its expert, Dr. Lee, and its research and development manager, Mr. Koske. Dr. Lee testified, based on his experience in designing total disc replacements, that a person of ordinary skill in the art would not believe that Synthes had possession of an intervertebral implant utilizing openings located anywhere on the cover plates based on the disclosure of peripheral grooves in the written description. In particular, Dr. Lee testified that: (1) based on his reading of the written description, the disclosure of peripheral grooves would not disclose openings located anywhere on the plates (see J.A. 20843-54, Tr. Transcript, Jan. 20, 2011 at 2453:24-2455:7); (2) there are significant biomechanical property differences between using peripheral grooves and interior slots (see id. at 2456:11-20); and (3) when the fiber system is attached via peripheral grooves, the distance of the fibers to the central axis is limited, but when openings are used anywhere on the cover plates, the fibers are not so limited in proximity to the central axis of the device (see id. at 2456:21-2458:10).
Mr. Koske buttressed Dr. Lee’s testimony that, based on his direct experience developing the accused products, the process of moving from peripheral grooves to internal slots is not a simple substitution, *1343 but a careful and time-consuming task. Mr. Koske, for example, testified that SK rejected early prototypes that used peripheral grooves on the cover plates. See J.A. 20757-58, Tr. Transcript, Nov. 20, 2011, 2076:21-2078:20. Mr. Koske was presented with a photograph of various SK devices, which he described as a “design time line” of M6 devices. See J.A. 20757, Tr. Transcript, Nov. 20, 2011, 2075:16-24; J.A. 27122 (DX1106). Mr. Koske then testified that the “early prototypes” with peripheral grooves were repeatedly rejected. See 20757-78, Tr. Transcript, Nov. 20, 2011, 2077:11-2081:3. Mr. Koske’s testimony and attendant trial exhibits demonstrated that SK’s development process from the peripheral grooves to the commercial products took months of work. See, e.g., J.A. 24054-56 (SK meeting minutes from September 2003 describing M6 devices in development process); J.A. 24122-42 (SK presentation from December 2003 illustrating design history of the M6 devices); J.A. 20758, Tr. Transcript, Nov. 20, 2011, 2081:4-12 (Koske testimony regarding April 2004 slide show depicting design of M6 at the time).
Mr. Koske also testified that SK had to overcome technical hurdles through its development process, one of which was to reduce wear on the device. Because the devices may be used on people in their 20s and 30s and would be required to last a lifetime, wear was an important consideration in design choice. See J.A. 20736, Tr. Transcript, Nov. 29, 2011, 1991:15-1993:3. In particular, Mr. Koske stated that the shape of the slots on the cover plates played a role in wear reduction. Mr. Koske explained that, because the metal cover plates are very thin, if the slots were too large, it would increase the risk of the cover plates breaking. See J.A. 20737, Tr. Transcript, Nov. 29, 2011, 1996:10-1997:12. SK, therefore, had to determine the precise size and location of the slots to ensure that the cover plates used as little metal as possible, reduced fiber wear, and still performed all of the necessary functions of the device. Id.
Taken together, Mr. Koske’s testimony is at least circumstantial evidence that it would not be evident that peripheral grooves on the cover plates would disclose to skilled artisans that internal slots would serve the same function. Mr. Koske’s testimony and the exhibits used during it, coupled'with Dr. Lee’s testimony, provided ample evidence for the jury to conclude that the written description did not support the broad claim limitations in the asserted claims.
Synthes contends that the difference Dr. Lee identified is “specious.” Rather than provide contrary evidence, however, Synthes points to a very curt cross-examination wherein Dr. Lee agreed with Synthes’ counsel that deeper grooves — or grooves cut deeper into the cover plates— might reduce the distance of the. fibers from the central axis. J.A. at 20889; Tr. Transcript, Dec. 5, 2011, .2601:16-23. Synthes’ cross-examination, however, does not address any of. Dr. Lee’s other points. And, even if Synthes’ cross-examination of Dr. Lee would allow us to draw a different conclusion, so long as substantial evidence supported the jury’s verdict, we must affirm its decision. See First Nat’l Mortg. Co., 631 F.3d at 1067-68; see also Guy v. City of San Diego, 608 F.3d 582, 588 (9th Cir.2010) (“[I]t has long been held that a jury may properly refuse to credit even uncontradicted testimony.”) (citations omitted); Watec Co. v. Liu, 403 F.3d 645, 651 n. 5 (9th Cir.2005) (“We will not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists.”) (citations omitted).
Synthes also attempts to minimize the relevance of Mr. Koske’s testimony by contending that his testimony was not directed to differences between using peripheral *1344 grooves and internal slots. Mr. Koske, however, testified that the shape and size of the slots, and the optimization of those slots, were important design considerations. And, while Synthes is correct that Mr. Koske did not use “magic words” to explain why SK chose internal slots instead of peripheral grooves, the jury was free to draw its own conclusions from Mr. Koske’s testimony. Coupled with Dr. Lee’s expert testimony on the “plurality of openings” limitation, the jury’s verdict that a person skilled in the art would not understand that a disclosure of peripheral grooves would teach that any and all openings on the cover plates are disclosed is supported by substantial evidence.
The jury was entitled to rely on the above testimony and evidence to conclude that the '270 patent’s written description does not support the broad plurality of openings limitation. Written description is a factual question, and whether the requirement is met “varies depending on the nature and scope of the claims and on the complexity and predictability of the relevant technology.” Ariad, 598 F.3d at 1351. While the predictability of the “aspect at issue” is not the dispositive factor in determining whether the written description requirement is satisfied, the district court relied on it, and Synthes strenuously disputes the district court’s conclusion. We, thus, briefly address it. Id.
Synthes frames the “aspect at issue” as “the shape and locations of openings used to join or anchor a fiber system to a plate.” Synthes’ Reply Brief at 46. As chronicled above, Dr. Lee testified that the difference between peripheral grooves and internal slots would present significant engineering and design choices and maintained that the differences between the two designs would present substantial biomechanical differences. Mr. Koske also explained that SK itself began its development process with peripheral grooves and ended with internal slots. Mr. Koske’s testimony also indicated that the shape of the internal slots was an important design choice that required testing to account for wear on the fiber system. All of this testimony was unre-butted.
Based on this evidence, the jury was free to conclude that, because the '270 patent’s written description does not disclose anything other than peripheral grooves, there would be significant biome-chanical differences between using peripheral grooves and internal slots. The jury was also free to determine that SK’s skilled artisans made a specific design choice to change its first prototype with peripheral grooves to specifically shaped and located internal slots. And, the jury was free to conclude, based on the evidence, that the use of internal slots for these devices was not predictable.
SK is correct that a “disclosure of a species may be sufficient written description support for a later claimed genus including that species.” Bilstad v. Wakalopulos, 386 F.3d 1116, 1124 (Fed.Cir.2004) (emphasis added). But, as we stated in Bilstad:
[i]f the difference between members of [a species] is such that [a] person skilled in the art would not readily discern that other [species] of the genus would perform similarly to the disclosed members, i.e., if the art is unpredictable, then disclosure of more species is necessary to adequately show possession of the entire genus.
Id. at 1125. In other words, predictability is a factual issue judged on a case-by-case basis. Here, SK presented its case to the jury, and the jury inferred that, in the field of intervertebral implants, the disclosure of peripheral grooves does not adequately demonstrate possession of the entire genus of possible openings. Because the jury’s *1345 verdict is supported by substantial evidence, we must defer to that finding.
Synthes contends that, because we remarked in Bilstad that the “mechanical world” is- a “fairly predictable field,” SK had to satisfy a heightened burden to demonstrate unpredictability. See Bilstad, 386 F.3d at 1126. First, SK had no higher burden than providing clear and convincing evidence that the '270 patent does not satisfy the written description requirement on the “plurality of openings” limitation. Second, while we did state in Bilstad that the mechanical field was “fairly predictable,” we did not hold that all inventions that may be characterized as “mechanical” allow claiming a genus based on disclosure of a single species.
As we noted in Ariad, there are no “bright-line rules governing, for example, the number of species that must be disclosed to describe a genus claim, as this number necessarily changes with each invention, and it changes with progress in a field.” Ariad, 598 F.3d at 1351. Indeed, factual inquiries will, at times, create confounding results. But, whatever inconsistencies may appear “to exist in the application of the law, those inconsistencies rest' not with the legal standard but with the different facts and arguments presented to the courts.” Id. at 1352. That is precisely the situation here. After hearing all of the testimony and evidence, the jury resolved the facts in favor of SK and determined that it had met its burden of proving by clear and convincing evidence that the '270 patent did not satisfy the written description requirement. Again, we are not entitled to disturb that finding when there was substantial evidence to support it.
2. Exceptional Case
Attorneys’ fees may be awarded to the prevailing party in “exceptional cases.” 35 U.S.C. § 285. The exceptional nature of a case must be established by clear and convincing evidence. Brooks Furniture Mfg., Inc. v. Dutailier, Int’l Inc., 393 F.3d 1378, 1382 (Fed.Cir.2005). Absent litigation misconduct, sanctions may be imposed only if: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless. Id. at 1381. In deciding whether a case is exceptional, trial courts are to consider the “totality of the circumstances” surrounding not just the initial allegations of infringement, but the maintenance of those claims throughout the litigation. See MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 915-19 (Fed.Cir.2012). Thus, when information gleaned from discovery or the court’s rulings make clear that the continued pursuit of litigation is frivolous or vexatious, fees may be warranted even where the filing of the initial complaint was arguably justified. See id.
SK contends that Synthes brought objectively baseless allegations of infringement and validity and continued to push those claims in the face of facts and claim construction rulings that made clear that Synthes’ claims were unsupportable. SK alleges that Synthes engaged in litigation misconduct by taking a number of baseless positions on everything from its claim construction arguments to its damages theory. SK contends that the district court’s view of Synthes’ conduct was too myopic, failing to examine the propriety of its conduct as a whole. After an independent review of the record — in its entirety — we agree with the district court that SK failed to demonstrate with clear and convincing evidence that it is entitled to attorney fees under § 285. See Synthes, ECF No. 577, 2012 WL 4483158 (N.D.Cal. Sept. 27, 2012).
III. Conclusion
Based on the foregoing, we affirm the district court’s denial of JMOL that claims 29-31 of the '270 patent are invalid under *1346 35 U.S.C. § 112, paragraph 1 for lacking an adequate disclosure to support the “plurality of openings” limitation. We also affirm the district court’s denial of SK’s request for attorneys’ fees under 35 U.S.C. § 285. Accordingly, we need not reach the other issues addressed by the district court and addressed by the parties in the briefing before this court.
AFFIRMED.
Dissenting opinion filed by Circuit Judge TARANTO.

. During the pendency of the district court proceedings through final judgment and at the time the present appeal was docketed, the patent-in-suit was assigned to Synthes. After briefing on this appeal was completed but before oral argument, the patent-in-suit was assigned to DePuy Synthes Products, LLC ("DePuy”). To reflect that change, DePuy was added as an appellant in this case and the caption was modified to reflect that addition. See Synthes USA, LLC v. Spinal Kinetics, 13-1047, ECF No. 48 (Fed.Cir. July 3, 2013).

. Claim 29 recites that both the third and fourth plates include a "plurality of openings.” See '270 patent, col. 8, 11. 19-48. The court’s claim construction of the phrase applied to both limitations, but for ease of reference we only recite the third plate.

. Congress recently changed the language and structure of 35 U.S.C. § 112. See Leahy-Smith America Invents Act, Pub.L. No. 112— 29. Those amendments made no changes of relevance to this appeal.